747 F.2d 169
 5 Employee Benefits Ca 2494
 PANTRY PRIDE, INC. and Pantry Pride Enterprises, Inc., Appellees,
v.
RETAIL CLERKS TRI-STATE PENSION FUND, Norman L. Tyrie,
Robert Carman, John C. Brennan, William Campbell, Angelo J.
Lagano, Samuel Rocco, William Stebbins, Wendell W. Young,
III, Roland Coleman, John Dailey, Edward Fagen, Joseph E.
Lair, J. Fred Maurer, James Varian, Ronald Rosmini and John
Bogan, Appellants.
 No. 83-1815.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 7, 1984.
Decided Oct. 31, 1984.
 
 Warren M. Laddon, Michael L. Banks, Morgan, Lewis & Bockius, Philadelphia, Pa., Barry S. Slevin, Roberta L. deAraujo, Seifman, Semo, Slevin & Marcus, P.C., Washington, D.C., for appellants.
 Stuart H. Savett, Robert J. LaRocca, Kohn, Savett, Marion & Graf, P.C., Philadelphia, Pa., David A. Rosen, Stein, Simpson & Rosen, New York City, for appellees.
 Before SEITZ, GIBBONS and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 I.
 
 1
 The Retail Clerks Tri-State Pension Fund and its trustees, defendants in this declaratory judgment action, appeal from an order of the district court denying, in part, their motion for interim employer's withdrawal liability payments demanded under the Multiemployer Pension Plan Amendments Act (the "MPPAA"), 29 U.S.C. Secs. 1399(c)(2), 1401(d) (1982). Jurisdiction of this appeal is asserted under 28 U.S.C. Sec. 1292(a)(1).
 
 II. FACTS
 
 2
 Food Fair, Inc., the plaintiffs' predecessor, operated a chain of grocery stores in Pennsylvania, New Jersey, and Delaware. Beginning in 1959, Food Fair, pursuant to its collective bargaining agreements, began contributing to the Retail Clerks Tri-State Pension Fund (the "Fund"). In 1979, as part of a bankruptcy reorganization, the 101 stores in Pennsylvania and New Jersey were closed. This left, in the geographic area covered by the Fund, only the 5 Delaware stores. In 1981, those 5 stores were also closed.
 
 
 3
 Upon the closing of the Delaware stores, the Fund determined that Pantry Pride Enterprises, Inc. ("Pantry Pride"). Food Fair's successor in interest, had withdrawn from the pension plan and was liable to the Fund under the MPPAA for its share of the Fund's total unfunded vested benefits. 29 U.S.C. Sec. 1381 (1982). The Fund calculated Pantry Pride's share to be $20,935,000, payable in 79 monthly installments of $326,379.16 and a final payment of $107,972.06. Pursuant to 29 U.S.C. Sec. 1399(b)(1), the Fund demanded that Pantry Pride pay the withdrawal liability.
 
 
 4
 Pantry Pride brought this action in the district court for a declaratory judgment that the MPPAA was unconstitutional. Although the Act requires arbitration of disputes arising over withdrawal liability, the district court, upon motion by Pantry Pride, stayed arbitration pending the resolution of the constitutional challenge in accordance with this Court's decision in Republic Industries v. Central Pennsylvania Teamsters Pension Fund, 693 F.2d 290 (3d Cir.1982).
 
 
 5
 The Fund then filed a motion with the district court asking, inter alia, that Pantry Pride be required to pay the withdrawal liability to the Fund during the pendency of the litigation in accordance with the previously calculated schedule. The district court denied this motion in part, limiting the payments required to $15,000 per month. The Fund appeals from this order.
 
 III. APPEALABILITY
 
 6
 Pantry Pride contends that the order of the district court was not appealable as either a final decision under 28 U.S.C. Sec. 1291, or as an interlocutory order under 28 U.S.C. Sec. 1292(a)(1).[1]
 
 
 7
 An interlocutory order "granting, continuing, modifying, refusing, or dissolving injunctions" is appealable under 28 U.S.C. Sec. 1292(a)(1). In determining whether an order is appealable as an order refusing an injunction, there are two requirements. First, the order must have the effect of refusing an injunction. Carson v. American Brands, Inc., 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981). Second, the appeal must "further the statutory purpose of 'permit[ting] litigants to effectively challenge interlocutory orders of serious, perhaps irreparable consequence.' " Id. (quoting Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955)).
 
 
 8
 The district court's order refused, in part, the Fund's motion for an injunction to compel the interim payment of withdrawal liability. Although the language of the Fund's motion did not use the word "injunction," this court must look to the substance of the request, rather than rely only on its language in determining whether an order is an appealable denial of an injunction.[2] Cf. Ettelson v. Metropolitan Life Insurance Co., 317 U.S. 188, 192, 63 S.Ct. 163, 164, 87 L.Ed. 176 (1942) (interpreting a predecessor to 28 U.S.C. Sec. 1292(a)(1)). In this case, the Fund requested, inter alia, that the court compel Pantry Pride to make future payments according to the schedule in its prior demand which, construed liberally, is a request for an injunction.
 
 
 9
 Also, the denial of the claim to interim withdrawal benefits is a serious one. Congress believed that it was important to insure that the flow of employer withdrawal liability payments was not delayed by an employer disputing liability. See Senate Committee on Labor and Human Resources, Summary and Analysis of S. 1076, 96th Cong., 2d Sess. (1980), reprinted in Special Supp. 310, Pens.Rep. (BNA) 81, 84-85 (1980); H.R.Rep. No. 869, 96th Cong.2d Sess. 84, reprinted in 1980 U.S.Code & Cong. Ad.News 2918, 2952 (payments should continue despite litigation). Further, the loss of the important statutory right to interim payments cannot be effectively reviewed once a final order has been made. If no interlocutory review were possible, the Fund could effectively lose its statutory protection against interruptions in the pre-arbitration flow of contributions that Congress mandated through the interim liability provisions.
 
 
 10
 The order, insofar as it refuses, in part, the request for interim payments,[3] is reviewable as an interlocutory order under 28 U.S.C. Sec. 1292(a)(1) (1982). Because of our resolution of the appealability issue, we need not reach the contention that the order was appealable as a collateral final order under the doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1948).
 
 IV.
 
 11
 Although we are satisfied that the order denying the Fund's claim to equitable relief is properly appealable, we do not believe that the district court should have considered the Fund's motion for affirmative relief in its present procedural posture. The Fund has not filed any counterclaim, and, in these circumstances, is not entitled to seek affirmative relief until it has done so.
 
 
 12
 It is true that the federal courts have abandoned the strict pleading requirements of the common law, and the district court may, in certain cases, liberally construe a pleading, or in this case a motion, to state a complaint or counterclaim. Fed.R.Civ.P. 8(c), 8(f). See also, Cooper v. Anderson, 277 F.2d 449 (5th Cir.1960) (failure to plead a counterclaim is not fatal when evidence introduced reveals a counterclaim and the issue is tried without objection). However, the policy favoring liberal construction does not take precedence over potential prejudice to the opposing party.
 
 
 13
 Pantry Pride may have been under the erroneous assumption that the Fund made a motion for security under Rule 65(c).[4] The issue of security, however, is separate from, and independent of, the question of whether the Fund has a right to interim payments under the MPPAA. Because of its erroneous assumption, Pantry Pride did not have an opportunity to respond to the motion as a counterclaim and may not have raised all of its defenses, if any, to the Fund's motion.
 
 
 14
 Under the circumstances, we cannot say that Pantry Pride was not prejudiced. We believe that in this case the district court should have required that the Fund comply fully with the rules of procedure before affording any relief. Although requiring that a claim for interim payments be filed as a complaint or counterclaim may have the unfortunate effect of delaying payment to the Fund, the rights involved in this case are significant enough to require that a court have the requisite pleadings and record before adjudicating the merits of the claim to interim withdrawal payments.
 
 V.
 
 15
 The order of the district court will be vacated, and the case will be remanded for further proceedings consistent with this opinion.
 
 
 16
 The mandate will issue forthwith.
 
 JAMES HUNTER, III, Circuit Judge, dissenting:
 
 17
 1. The majority opinion finds that the Fund's request for interim payments of withdrawal liability was a prayer for injunctive relief, and therefore that the district court's order denying that relief was appealable, by looking "to the substance of the request, rather than rely[ing] only on its language ...." Yet the majority applies a rule of strict construction to find that the very same request was not a counterclaim, and therefore that the Fund is entitled to no affirmative relief. I find this disturbing, not only because it contravenes the cardinal principle that pleadings are to be "construed so as to do substantial justice," see Fed.R.Civ.P. 8(f), but particularly because in this case it facilitates the very evil that the interim payment provisions of the Multi-employer Pension Plan Amendments Act ("MPPAA") were designed to prevent.
 
 
 18
 2. A claim for relief in federal court need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for judgment for the relief to which he deems himself entitled." Fed.R.Civ.P. 8(a). The Fund's motion for interim payments very clearly meets this standard, both requesting the payments and setting forth the statutory and factual bases for the claim. See II App. at 219-21. Pleadings are to be judged by their substance, not their form, and therefore, the "purely procedural matter of denomination will not be permitted to interfere with the determination of substantive rights ...." De Vito v. Hoffman, 199 F.2d 468, 469 (D.C.Cir.1952). See, e.g., United States v. White County Bridge Commission, 275 F.2d 529, 535 (7th Cir.), cert. denied sub nom. Clippinger v. United States, 364 U.S. 818, 81 S.Ct. 50, 5 L.Ed.2d 48 (1960); Goulding v. Sands, 237 F.Supp. 577, 578 (W.D.Pa.1965), aff'd, 355 F.2d 230 (3d Cir.1966). The majority concedes this, yet regards the Fund's request as a nullity merely because it was denominated "motion" instead of "counterclaim."
 
 
 19
 3. According to the majority, this technicalism is mandated by the prejudice that would inure to Pantry Pride if the motion were treated as a counterclaim. As evidence of this prejudice, the majority points to Pantry Pride's attempts here and in the district court to characterize the motion as one for security. Because this characterization was necessary for Pantry Pride's argument that no appealable order existed here, it can hardly be taken as evidence that Pantry Pride was actually prejudiced in its ability to defend against the motion in the district court. Similarly, merely because Pantry Pride, relying on dictum in Republic Industries, 693 F.2d 290, 298 (3d Cir.1982), moved the district court to substitute a bond for the interim payments does not indicate that Pantry Pride lacked notice of the nature of the relief that the Fund was requesting.
 
 
 20
 4. More fundamentally, the search for actual prejudice to Pantry Pride is doomed to failure. The lack of a full volley of pleadings and a record that the majority deems so fatally prejudicial simply could not have harmed Pantry Pride's ability to defend against the motion. This is so because no defense to a motion for interim payments under MPPAA is cognizable in the first instance before the district courts.
 
 
 21
 5. The statutory language that creates interim withdrawal liability is mandatory: "withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor ... notwithstanding any request for review ...," 29 U.S.C. Sec. 1399(c)(2) (1982) (emphasis supplied); "[p]ayments shall be made by an employer in accordance with the determinations made [by a plan] until the arbitrator issues a final decision ...," id. Sec. 1401(d) (emphasis supplied). This language makes clear that, until an employer's withdrawal liability is determined through arbitration, the court has no discretion to do anything other than order interim payments in accordance with the Fund's demand. In essence, an action to enforce a pension fund's demand for payments of withdrawal liability pendente lite is akin to an action to enforce a judgment already rendered. See Pension Benefit Guaranty Corp. v. R.A. Gray Co., --- U.S. ----, ----, 104 S.Ct. 2709, 2720, 81 L.Ed.2d 601 (1984) (withdrawal liability provisions of MPPAA effect no taking from employers because "benefits ... have already vested with the employees at the time of the employer's withdrawal").
 
 
 22
 6. This is not to say that MPPAA leaves employers without recourse against unreasonable or inaccurate demands for interim payments of withdrawal liability. A demand for interim payments of withdrawal liability is made under 29 U.S.C. Sec. 1399, and is therefore itself subject to arbitral review for unreasonableness or clear error. See 29 U.S.C. Sec. 1401(a)(3)(A).[1] An employer may also bring an action in court for review of the decision in such an arbitration. See id. Sec. 1401(b)(2). Where, however, as here, the employer forgoes the right to arbitrate the demand, "the amounts demanded by the plan sponsor under section 1399(b)(1) shall be due and owing ... and the plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection." Id. Sec. 1401(b)(1).[2] In such a case, the court must enforce the fund's demand. See id. Secs. 1399(c)(2), 1401(d).
 
 
 23
 7. As the majority recognizes, the requirement that employers make interim payments of withdrawal liability was intended to protect pension funds and their beneficiaries from interruptions in the flow of contributions during the pendency of employer challenges to fund demands. See Senate Committee on Labor and Human Resources, Summary and Analysis of S. 1076, 96th Cong., 1st Sess. (1980), reprinted in 310 Pens.Rep. (BNA) 81, 84 (1980). Specifically, Congress was aware that the financial integrity of pension funds, and therefore "the well-being and security of millions of employees, retirees, and their dependents," 29 U.S.C. Sec. 1001a(a)(3), would be at risk if employers appealing determinations of withdrawal liability could profit financially from engaging in dilatory litigation tactics. The interim payment provisions are but one device in a scheme designed to place upon employers the costs of delaying ultimate determinations of withdrawal liability. See Senate Committee on Labor and Human Resources, supra, at 84-85 (discussing interim withdrawal liability and statutory presumptions in favor of pension funds).
 
 
 24
 8. Despite its recognition of this important congressional policy, the majority in this case countenances the continuation of a situation of precisely the sort that MPPAA's interim payment provisions were designed to prevent. Pantry Pride has been permitted to evade making payments of withdrawal liability since its withdrawal from the Fund in 1981. Meanwhile, the Fund is experiencing grave financial distress, due in part to the shortfall in contributions caused by the closing of Pantry Pride's stores. See II App. at 277-81.
 
 
 25
 9. Because the majority reaches this concededly "unfortunate" result by adhering to a long-disfavored insistence upon procedural rigor, I respectfully dissent.[3]
 
 
 
 [1]
 Pantry Pride also contends that the appeal was untimely because the notice of appeal was filed more than 60 days after the district court announced orally that the motion would be denied in part. The time to appeal, however, runs from the date that the order is put in writing and entered on the court's docket. See United States v. Indrelunas, 411 U.S. 216, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973). The Fund's notice of appeal filed on November 3, 1983 was clearly timely with respect to the court's order which was first written and entered on October 6, 1983
 
 
 [2]
 The court also thought it was entering an injunction:
 [counsel for Fund]: Your Honor, may I ask that the Court grant permission that we be able to have an interlocutory appeal on an expedited basis on this?
 THE COURT: I would be happy to do that.
 * * *
 So I invite you [counsel for the Fund] to prepare [the order] the way you think best. If you prepare it under 1292(b), which is where I certify that the issue is dispositive of crucial matters in the case, that might be a problem because I am not sure I could certify that in good conscience. But if you frame the bond, the grant of their motion in terms of preliminary equitable relief, I believe you have a direct right of appeal from that.
 [counsel for Fund]: We'll submit a proposed order.
 III App. at 179-180.
 
 
 [3]
 The Fund also requested interest, liquidated damages, and attorney's fees in its motion. Because of our disposition of the claim to interim withdrawal payments, infra, it is not necessary to reach the issue of whether the denial of these requests is appealable under section 1291 or 1292(a)(1)
 
 
 [4]
 Pantry Pride in its brief before this court characterizes the Fund's motion as a one for security under Fed.R.Civ.P. 65(c). Before the district court, Pantry Pride also appeared to believe that the issue was one of security:
 THE COURT: The next issue is: Where do we stand here on payments and security?
 * * *
 [Counsel for Pantry Pride]: ... we are willing to put that up as a bond in Republic, as we mentioned to Your Honor.
 THE COURT: You suggest that you do this, you want to put this in some kind of escrow fund and have it earn interest?
 [Counsel for Pantry Pride]: That would be fine with us.
 * * *
 THE COURT: All right. What else is before me?
 III App. at 143-44. Our decision does not require us to address the serious issue raised by the Fund that a substitution of security for the interim payments may be inconsistent with the Congressional mandate in the MPPAA that the full interim payments be made to the Fund. Cf. Republic Industries, 693 F.2d at 298.
 
 
 [1]
 Arbitration on a question of interim liability would be permissible even where arbitration on ultimate liability is stayed under our decision in Republic Industries. As that decision recognized, see 693 F.2d at 298, the issues of interim liability and ultimate liability are completely extricable. See 29 U.S.C. Sec. 1401(d) (providing that the amount of withdrawal liability ultimately assessed against an employer be adjusted for overpayments or underpayments pendente lite )
 
 
 [2]
 The thrust of Pantry Pride's arguments in this appeal has been to invite this court to create a judicially enforceable reasonableness requirement for fund demands pendente lite. There would seem to be little need for such an innovation, given the opportunities for review provided by the statute. However, even if this court were to recognize a judicial power to review fund demands in the first instance, the judgment of the district court should be reversed. In deciding to deny in part the Fund's request for interim relief, the district court seems to have been concerned primarily with the effect the demand might have on Pantry Pride's finances. See III App. at 163. While this solicitude might have been commendable in another context, it is not a permissible basis for a court's decision in a case under MPPAA. Concern for the fiscal well-being of employers, particularly at the expense of pension funds and their beneficiaries, is conspicuously absent from MPPAA and its legislative history
 
 
 [3]
 I concur with the majority's holding that that Fund's entitlement to attorney's fees and interest on delinquent payments should not be reached on this appeal. The order from which the Fund appeals dealt only with Pantry Pride's interim withdrawal liability, and deferred all other matters. III App. at 184. Thus the Fund's entitlement to fees and interest is not properly raised in this appeal