

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-29-1997

# Galgay v. Beaverbrook Coal Co

Precedential or Non-Precedential:

Docket 95-7532

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Galgay v. Beaverbrook Coal Co" (1997). *1997 Decisions.* Paper 22.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/22

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 95-7532

_____

FRANK J. GALGAY; FRANCIS P. BONNER, TRUSTEES OF THE
ANTHRACITE HEALTH AND WELFARE FUND (PENSION TRUST); ANTHRACITE
HEALTH AND WELFARE FUND (PENSION TRUST),

Appellants

v.

BEAVERBROOK COAL COMPANY; GEORGE HUSS JR.;
WILLIAM HUSS; HUSS INDUSTRIES, INC.

Appellees

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 95-00433)

_____

Argued June 28, 1996

_____

BEFORE: BECKER, NYGAARD AND LEWIS, Circuit Judges

(Opinion Filed January 29, 1997)

_____

A. Richard Caputo (Argued)
Thomas J. Mosca
Shea, Shea and Caputo
387 Wyoming Avenue
P.O. Box 2059
Kingston, Pa.  18704-2059

Counsel for the Appellants


Michael Beltrami (Argued)
1110 South Church Street
Hazleton, Pa.  18201

Counsel for the Appellees

Nygaard, Circuit Judge.

This appeal stems from appellants' action to compel Beaverbrook Coal Company, George Huss, Jr., William Huss and Huss Industries, Inc. to make interim withdrawal liability payments while the parties arbitrate liability. The district court denied appellants' motion for injunctive relief and their motion for reconsideration. We will reverse and remand.

I.

Appellants are trustees of the Anthracite Health and Welfare Fund and the fund itself (collectively, the "Fund"), a multiemployer pension plan under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1381 et seq. The Beaverbrook Coal Company, a signatory to the Anthracite Wage Agreement, is a general partnership consisting of George Huss, Jr. and William Huss. Huss Industries, Inc. is a Pennsylvania corporation. Beaverbrook, George and William Huss, and Huss Industries are all appellees.

For over ten years, Beaverbrook made payments to the Anthracite Health and Welfare Fund Pension Plan. In August of 1994, the Fund notified Beaverbrook that it had effectively withdrawn from the Fund on June 15, 1993. The Fund subsequently assessed Beaverbrook withdrawal liability in the amount of $146,242.00, to be paid in monthly installments of $1,966.17. Beaverbrook initiated arbitration proceedings to contest the Fund's claim. Because Beaverbrook refused to make withdrawal liability payments in the interim, the Fund sued under 29 U.S.C. § 1132(g)(2) to recover the delinquent payments, liquidated

2

damages, attorney's fees and costs. The Fund also sought an order directing appellees to make monthly payments and to provide a bond in the total amount of the withdrawal liability. One month later the Fund requested the same relief by a motion for a mandatory preliminary injunction.

The district court denied both the Fund's motion for a preliminary injunction and its motion for reconsideration. Noting the employer's "compelling obligation to make interim payments" under MPPAA, the court nonetheless held that the Fund had failed to demonstrate that it would suffer irreparable harm if temporary relief were not granted. The district court further indicated that Beaverbrook might not be obligated to make interim payments when the merits of the Fund's claim were considered if Beaverbrook showed that it would suffer irreparable harm as a result. Finally, the court declined to rule on whether all of the defendants were employers for purposes of MPPAA and, consequently, obligated to satisfy Beaverbrook's withdrawal liability, holding that Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia, 830 F.2d 1241 (3d Cir. 1987) mandated that the issue be addressed first in arbitration.

On appeal, the Fund argues that it need not satisfy the traditional requirements for a preliminary injunction because, under MPPAA, employers are required to make interim payments, so the Fund need show only that payments were not made when demanded. The Fund also disputes the district court's suggestion that Beaverbrook may avoid making interim payments if it can demonstrate that it would be irreparably harmed as a result. In

addition, the Fund contends that under Flying Tiger the court must decide whether all of the appellees are considered employers for purposes of MPPAA, since the answer to that question determines the arbitrator's jurisdiction. The issues appellant raises are legal questions over which we exercise plenary review; we will consider each in turn.

## II.

An employer withdraws from a multiemployer pension plan when the employer either permanently ceases to have an obligation to contribute under the plan or permanently ceases all covered operations under the plan. 29 U.S.C. § 1383(a). The employer is liable for its share of the plan's unfunded vested benefits as calculated at the time of withdrawal. 29 U.S.C. §§ 1381, 1383, 1391; Concrete Pipe & Products v. Construction Laborers Pension Trust, 508 U.S. 602, 609, 113 S. Ct. 2264, 2272 (1993). The plan sponsor has the responsibility of determining this withdrawal liability, notifying the employer and collecting payment. 29 U.S.C. § 1382. If the employer disputes the amount set, it may ask the plan sponsor to conduct a reasonable review of the computed liability. 29 U.S.C. § 1399(b)(2)(A). In the event the dispute is unresolved, either party may request arbitration. 29 U.S.C. § 1401(a)(1). The arbitrator's award, in turn, may be challenged in federal court. 29 U.S.C. § 1401(b)(2).

Congress enacted MPPAA out of concern that multiemployer pension plans would collapse as employers withdrew if the remaining contributors became too few in number to pay the unfunded vested benefits. See H.R. Rep. No. 869, Pt. II, 96th

4

Cong., 2d Sess. 10-11 (1980), reprinted in 1980 U.S.C.C.A.N. 2918, 3000-01.  Congress foresaw that the purpose of MPPAA would be undermined if employers could postpone paying their debts to pension funds by engaging in protracted litigation over withdrawal liability.  Pantry Pride, Inc. v. Retail Clerks Tri-State Pension Fund, 747 F.2d 169, 171 (3d Cir. 1984) (citing Senate Comm. on Labor and Human Resources, Summary and Analysis of S. 1076, 96th Cong., 1st Sess. (1980), reprinted in Special Supp. 310, Pens.Rep. (BNA) 81, 84-85 (1980); H.R. Rep. No. 869, reprinted in 1980 U.S.C.C.A.N. at 2952).  Therefore, the statute directs employers to begin payments upon notification of withdrawal liability, whether or not they choose to dispute the determination.

Section 4219(c)(2) of MPPAA states:

Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor . . . beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule.

29 U.S.C. § 1399(c)(2).  Similarly, § 4221(d) of MPPAA, 29 U.S.C. § 1401(d), specifies that payments are to be made during arbitration.  Should the arbitrator decide that the plan sponsor erred in assessing withdrawal liability, the employer is reimbursed for any overpayment.  Id.

When an employer fails to make a withdrawal liability payment within the prescribed time, an action may be brought in federal or state court to compel payment.  29 U.S.C. § 1451(b) & (c).  The plan sponsor need show only that it made a demand for

5

interim payments under 29 U.S.C. § 1382 and that the payments were not made.

Here, Beaverbrook does not dispute that withdrawal liability payment was demanded, or that it has refused to comply with the demand. Instead, it argues that a motion for preliminary injunction is not a proper procedure for either compelling payment or determining whether the appellees are all considered employers for purposes of MPPAA. We reject its argument. The denomination of the procedural vehicle is not important. It is true that we often consider demands for interim withdrawal liability payments after summary judgment. E.g., Board of Trustees of Trucking Employees Pension Fund v. Centra, 983 F.2d 495 (3d Cir. 1992); United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc., 787 F.2d 128 (3d Cir. 1986), aff'd, 481 U.S. 735 (1987). Nonetheless, we have never foreclosed using preliminary injunctive relief to ensure the payments mandated by Congress are made.

For instance, in Pantry Pride, we heard an appeal from a district court order denying a motion to compel withdrawal liability payments, which we construed as an order denying a preliminary injunction. 747 F.2d at 170-71. Although we held that the district court should not have considered the motion because the moving party in that action had not first made a claim for interim payments, we indicated that the district court would be free to consider a request for affirmative relief once the claim had been made, since the court could then be certain

6

the employer had been afforded an opportunity to respond to the motion and raise all defenses. Id. at 171–72. In this case, the Fund acted as we directed in Pantry Pride, first filing a complaint with a claim for interim payments, then making its motion for a preliminary injunction.

The district court held that for the Fund to obtain preliminary injunctive relief it must first meet the traditional requirements we reiterated in Acierno v. New Castle County: 1) a reasonable probability of eventual success in the litigation; and 2) irreparable injury if relief is not granted, while taking into account when relevant; 3) the possibility of harm to other interested persons from the grant or denial of the injunction and; 4) the public interest. 40 F.3d 645, 653 (3d Cir. 1994) (citing Delaware River Port Authority v. Transamerican Trailer Transport, Inc., 501 F.2d 917, 919–20 (3d Cir. 1974)). The district court found that any loss to the Fund could be measured by economic terms; hence, the Fund would suffer no irreparable injury. In so finding, the district court erred.

The traditional four-prong test for garden-variety preliminary injunctions is not applicable in this context. In enacting the interim withdrawal liability provisions of MPPAA, 29 U.S.C. §§ 1399(c)(2), 1401(d), and the judicial mechanism for their enforcement, 29 U.S.C. § 1451(b) & (c), Congress has effectively determined that pension funds will be irreparably harmed unless employers are enjoined to make interim payments while litigation proceeds. By enacting the withdrawal liability provisions, Congress has concluded that the uninterrupted flow of

7

payments is important in itself, Pantry Pride, 747 F.2d at 171, and that the ultimate recovery of payments will not suffice to make the Fund whole.  Congress has likewise determined that neither party's probability of success in litigation is relevant:  interim payments must be made regardless.

Employers may be financially pressed to make sizeable monthly payments to pension funds, and some courts when deciding generally whether to order interim payment under 29 U.S.C. § 1381, have created an equitable exception to the requirement in instances where the employer can show that it would suffer severe financial hardship, and that the pension fund's claim is frivolous or not colorable.  See Trustees of Plumbers and Pipefitters National Pension Fund v. Mar-Len, Inc., 30 F.3d 621, 626 (5th Cir. 1994); Trustees of the Chicago Truck Drivers Pension Fund v. Rentar Industries, Inc., 951 F.2d 152, 155 (7th Cir. 1991); see also Giroux Brothers Transportation, Inc. v. New England Teamsters & Trucking Industry Pension Fund, 73 F.3d 1, 5 (1st Cir. 1996) (dictum).  Similarly, the district court indicated that, when considering the merits of the Fund's claim for interim withdrawal liability payments, it might have the equitable authority to refuse to order payments if Beaverbrook showed that irreparable injury would result.

We have never held that there are any equitable exceptions to the statutory provisions on interim payments, see Centra, 983 F.2d at 507-08,[1] and we decline to do so now.  Congress has

_____

[1]In Flying Tiger, 830 F.3d at 1253, we suggested in dictum that a court could deny a pension fund's request upon an employer's demonstration of irreparable injury.  However, we went

8

clearly indicated its intent in this matter.  The plain language of the statute declares, "Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor . . . ."  29 U.S.C. § 1399(c)(2) (emphasis added).  No exceptions are provided.  Our jurisdiction is limited to ordering the employer to make interim payments once the pension fund has demonstrated that it complied with the statutory requirements for calculating liability and notifying the employer.  29 U.S.C. § 1382.

Notably, the two circuits which adopted an irreparable-injury exception have later held that courts only have discretion to exercise it once the employer has made an affirmative showing that the pension fund lacks a colorable or non-frivolous claim.  Mar-Len, 30 F.3d at 626 (5th Cir.); Rentar Industries, 951 F.2d at 155 (7th Cir.).  These circuits have adopted the equitable exception solely to ensure that the courts are not used by an unscrupulous pension fund lacking a legitimate withdrawal liability claim to squeeze money from an employer and propel it into bankruptcy.  Mar-Len, 30 F.3d at 626 (citing Trustees of Chicago Truck Drivers Pension Fund v. Central Transport, Inc., 935 F.2d 114, 119 (7th Cir. 1991)).

We do not now have occasion to consider adopting a similar equitable exception.  At no point in the argument of this case has Beaverbrook contended that the Fund's claim is frivolous or non-colorable, although supplemental briefs were submitted on the

---

on to say that any such potential defenses were irrelevant to the issue in Flying Tiger, namely, whether the dispute in that case had to be arbitrated.

very issue of possible equitable defenses to interim payment liability.  See Rentar Industries, 951 F.2d at 155 (holding that the employer must make an affirmative showing that the pension fund lacks a colorable claim).  Nor did Beaverbrook submit any evidence to support its claim of irreparable harm.  See id. (declaring the district court was not obligated to hold a hearing so the employer could demonstrate irreparable harm when employer offered no evidence to support its assertion).

We agree with the reasoning employed by the Fifth and Seventh circuits in concluding that a showing of irreparable harm to the employer is alone insufficient to warrant equitable relief from interim payment liability.  In both instances, these courts of appeals have recognized that withdrawing employers are often financially troubled companies.  Mar-Len, 30 F.3d at 626; Central Transport, 935 F.2d at 118-19.  If such companies are allowed to defer paying their debt to the pension funds, and go out of business while liability is being litigated, the pension funds will be saddled with full liability for the unfunded pension benefits.  The interim payment provisions are designed to diminish this risk.  Mar-Len 30 F.3d at 626; Central Transport 935 F.2d at 118.

We believe that it would contort the law if we were to allow the undercapitalized or financially precarious companies that pose the very risk to pension funds that MPPAA was designed to correct to defer payment because they pose that risk.  It is inappropriate to refuse a preliminary injunction ordering interim withdrawal liability payments on the grounds that the payments

10

might pose a financial risk to the employer.

Congress has effectively answered all the questions a court generally asks when considering a motion for a preliminary injunction. We will not substitute our own views on the wisdom of ordering interim withdrawal liability payments. The Fund had sustained its burden of showing that withdrawal liability was assessed, Beaverbrook was notified and payments were not made. That is all the statute requires. Therefore, the district court erred by refusing to grant the Fund's request for a preliminary injunction.

III.

The district court also did not decide whether all of the appellees are employers for purposes of MPPAA, finding that our decision in Flying Tiger directed that the issue first be resolved in arbitration. Here too it erred, because resolving this issue determines the arbitrator's authority over the withdrawal liability dispute.

In both Flying Tiger and our recent decision in Doherty v. Teamsters Pension Trust Fund of Philadelphia, we have distinguished between disputes over whether an entity has ceased to be an employer within the meaning of MPPAA, which must be resolved in arbitration, and disputes over whether an entity has ever become an employer, which must be resolved in the courts. Doherty, 16 F.3d 1386, 1390-91 (3d Cir. 1994); Flying Tiger, 830 F.2d at 1250-51. In the first instance, Congress has directed that an arbitrator shall initially determine if an entity that was once an employer took steps to evade or avoid liability as

11

defined under 29 U.S.C. § 1392(c).  29 U.S.C. § 1401(a)(1) ("Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration."); Flying Tiger, 830 F.2d at 1250.

By contrast, an entity which has never been an employer within the meaning of MPPAA is not subject to the arbitrator's jurisdiction, since 29 U.S.C. § 1401(a)(1) only mandates arbitration for disputes between "an employer and the plan sponsor."  Doherty, 16 F.3d at 1390 (quoting 29 U.S.C. § 1401(a)(1)).  Therefore, entity's employer status is a legal question to be resolved by the court.  In particular, we held in Doherty that the issue of whether persons or entities are "alter egos" or members of the same controlled group is properly resolved in the courts.  Id. at 1390-91.

Here, some of the appellees have disputed the Fund's assertion that they are liable as employers under an "alter-ego" or controlled-group theory.  This is a question of law upon which courts are indeed empowered to act.  The district court erred by holding that the issue should be resolved in arbitration.  We will remand this issue for further proceedings.

IV.

For these reasons, we will reverse and remand to the district court to determine whether the appellees are employers under MPPAA, and for it to enter an order requiring Beaverbrook to make interim payments as scheduled by the Fund.

_____

12

Circuit JudgeFRANK J. GALGAY; FRANCIS P. BONNER, TRUSTEES OF THE ANTHRACITE HEALTH AND WELFARE FUND (PENSION TRUST); ANTHRACITE HEALTH AND WELFARE FUND (PENSION TRUST), Appellants v. BEAVERBROOK COAL COMPANY; GEORGE HUSS JR.; WILLIAM HUSS; HUSS INDUSTRIES, INC.

Appellees, No. 95-7532

BECKER, J., Dissenting.

The majority's decision is driven by its conclusion that when the Congress provided that withdrawal liability "shall be payable . . . no later than 60 days after the date of the demand notwithstanding any request for review," 29 U.S.C. § 1399(c)(2) (emphasis added), Congress provided for a mandatory injunction. Under this approach, a district court must impose such an injunction even if: (1) the trustees' demand for payment is frivolous (in terms of either liability or amount demanded); and (2) the payment would bankrupt or financially cripple the withdrawing employer and eliminate the possibility of future payments. I disagree.

I.

First, I doubt that Congress's words here are susceptible to that construction. It uses the phrase "shall be payable," which seems much more open-ended than "shall be paid." Thus, the statute is at least ambiguous. Looking to Congressional intent, I do not believe that Congress here intended a result so inflexible and therefore so problematic.

Like the majority, I read Congress to be concerned that an

13

employer could stymie a pension fund's collection attempts by pursuing litigation over withdrawal liability. However, by disallowing consideration of the employer's inability to pay in the face of a frivolous withdrawal liability claim, the majority actually undermines Congress's goals. If an employer becomes financially insolvent as a result of its withdrawal payment obligations, the pension fund will not only be unable to receive "an uninterrupted flow of payments," but also will be the but for cause of its own inability to secure "ultimate recovery." Furthermore, the proposal that I will advance -- giving courts the discretion to deny a preliminary injunction only when the pension's claim is not colorable and when requiring interim payments would push a financially distressed employer over the cliffs -- preserves Congress's "pay now, dispute later" scheme.

## II.

There is an even more fundamental problem with the majority's analysis, one which does not depend on finding an ambiguity in the Congressional language. The majority uncritically assumes that the Congressional locution "shall be payable" translates into a proscription against a federal court's using its historic equity powers to withhold or condition relief. It is incorrect.

## A.

As I see it, the seminal cases in this area are Hecht Co. v. Bowles, 321 U.S. 321 (1944), and Porter v. Warner Holding Co., 328 U.S. 395 (1946). These cases arose under the World War II Emergency Price Control Act and Regulations, and involved actions

14

by the Price Administrator to enforce compliance therewith.

Section 205(a) of the Act provided that

[w]henever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act, *** he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provisions, and upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond.

Emergency Price Control Act of 1942, 50 U.S.C. App. Supp. II

§§ 901 et seq., 925.  (emphasis added).

The question presented in Hecht was whether the Administrator, having established that a defendant has engaged in acts or practices violative of § 4 of the Act, is entitled as of right to an injunction restraining the defendant from engaging in such acts or practices, or whether the court has some discretion to grant or withhold such relief.  Although the Court determined that the mandatory character of § 205(a) is clear from its language, history and purpose (in our case the language is less clear), it held that the phrase "shall be granted" does not require issuance of an injunction against violation of a price regulation merely because the Administrator asks for it. Instead, the district court may, in accordance with equity practice, exercise discretion in determining what order shall be made.  Hecht, 321 U.S. at 328-29.  The court explained that

[a] grant of jurisdiction to issue compliance orders hardly suggests an absolute duty to do so under any and all circumstances.  We cannot but think that if Congress had intended to make such a drastic departure from the traditions of equity practice, an unequivocal statement of its purpose would have been made.

15

<u>Id.</u> at 329.

In <u>Porter</u>, the Court dealt with the power of a federal court, in an enforcement proceeding under § 205(a), to order restitution of rents collected by a landlord in excess of the permissible maximums.  In rejecting the position of the Price Administrator that there was no jurisdiction under the statute to give the equitable remedy of restitution, the Court, following <u>Hecht</u>, held that

> the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command.  Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.  'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.' <u>Brown v. Swann</u>, 10 Pet. 497, 503.  <u>See</u> <u>also</u> <u>Hecht Co. v. Bowles</u>, <u>supra</u>.

<u>Porter</u>, 328 U.S. at 398.

Another helpful case is <u>Weinberger v. Romero-Barcelo</u>, 456 U.S. 305 (1982).  In <u>Weinberger</u>, the Court faced the question whether the mandatory language of the Federal Water Pollution Control Act requires a district court to enjoin immediately all discharges of pollutants that do not comply with the Act's permit requirements, or whether the district court retains discretion to order other relief to achieve compliance.  Reviewing the structure of the statutory scheme and the legislative history, the Court held that the statute contemplated the exercise of discretion.  Importantly, however, the Court also relied on <u>Hecht Co. v. Bowles</u>, <u>supra</u>, pointing out that, while Congress may intervene and guide or control the exercise of the courts'

16

historic equity discretion, which reflects a "practice with a background of several hundred years of history," <u>Hecht</u>, 321 U.S. at 329, we "<u>should not lightly assume that Congress has intended to depart from established principles</u>." <u>Weinberger</u>, 456 U.S. at 313 (emphasis added).  Nor should we.

B.

Nothing cited to us suggests that Congress has been so direct and explicit in the MPPAA that we can conclude, much less "lightly assume," that all equitable discretion has been removed. I, therefore, would follow the lead of the Fifth Circuit in <u>Trustees of Plumbers and Pipefitters N.H. Pension Fund v. Mar-Len, Inc.</u>, 30 F.3d 621, 626 (5th Cir. 1994), and the Seventh Circuit in <u>Robbins v. McNicholas Transport Co.</u>, 819 F.2d 682, 685-86 (7th Cir. 1987).  As the majority acknowledges, these courts have adopted an "equitable exception" to the MPPAA's "pay now, dispute later" scheme.  The equitable exception was first articulated by the Seventh Circuit, which observed in <u>McNicholas</u>:

> where the trustees bring an action to compel payments, pending arbitration, the court should consider the probability of the employer's success in defeating liability before the arbitrator and the impact of the demanded interim payments on the employer and his business.

<u>McNicholas Transport Co.</u>, 819 F.2d at 685.  The <u>McNicholas</u> standard has evolved into a test whereby "a reviewing court merely determines whether the pension plan's claim [for withdrawal liability] is nonfrivolous and colorable."  If the claim is colorable, then the employer "must make interim payments while it contests the underlying liability."  <u>Mar-Len</u>, 30 F.3d at 626.  If the claim is frivolous or not colorable, the district

17

court has a narrow measure of discretion to excuse interim payments which to do otherwise would cause irreparable economic injury to the employer. Id.; Trustees of Chicago Truck Drivers Union Pension Fund v. Central Transport, Inc. 935 F.2d 114, 119 (7th Cir. 1991).

In suggesting that we follow the Fifth and Seventh Circuit test, I underscore that the "equitable exception" would take hold only in the rare case. The district court can exercise discretion solely to ensure that the courts are not used by an unscrupulous pension fund lacking a legitimate withdrawal liability claim to squeeze money from an employer and propel it into bankruptcy. See Central Transport, 935 F.2d at 119. It also bears emphasizing that federal judicial involvement need not be extensive nor burdensome -- federal judges are comfortable with making threshold colorability assessments, which is what I would require as to the viability of the withdrawal liability claim. The same is true for the inquiry as to whether the withdrawal liability will be so burdensome as to permanently cripple the employer (and deprive the Fund of future payouts). I also stress that, contrary to the majority's intimation, our decision in Board of Trustees of Trucking Employees Pension Fund v. Centra, 983 F.2d 495 (3rd Cir. 1992), did not decide the question before us here. Indeed, after noting the Seventh Circuit position, the Centra panel was careful to explain that the equitable exception could not possibly apply in the case before it because the withdrawing employer was "well heeled."

C.

18

It is not clear from the present record whether the Trustees' withdrawal liability claim here is in fact colorable or whether the financial impact of withdrawal liability payouts on Beaverbrook will in fact be devastating.  I note that Beaverbrook has represented that it will experience serious financial difficulty if required to make interim withdrawal payments prior to the resolution of its challenge to the assessment of liability.  And while it did not make a formal proffer on the point, Beaverbrook's litigation position suggests its belief that the withdrawal liability claim is wholly without merit.  I would remand for consideration of such matters under the Seventh Circuit test, which I read to be conjunctive:  if the district court finds that the claim for withdrawal liability is not colorable, and if payment of withdrawal liability would push Beaverbrook over the cliff, as it were, it can utilize its equitable discretion to fashion a decree that might relieve Beaverbrook of the obligation to make interim payments (or some portion thereof).

A good argument can be made that this test should be made in the disjunctive, so as to protect every employer from frivolous claims and from bankruptcy.  But I would be reluctant to extend our equitable discretion in the absence of more persuasive authority and a more compelling factual scenario.

For the foregoing reasons, I respectfully dissent.

19