**I.A.M. NATIONAL PENSION FUND BENEFIT PLAN A, et al.,**
Appellees,

v.

**COOPER INDUSTRIES, INC.,**
Appellant.

No. 85–5789.

United States Court of Appeals, District of Columbia Circuit.

Argued March 25, 1986.

Decided April 25, 1986.

Glenn Summers, with whom Carl L. Taylor and Betty S. Wommack, Washington, D.C., were on brief, for appellant.

Laura Steinberg, with whom Roger P. Hunt, Boston, Mass., and Robert T. Osgood, Washington, D.C., were on brief, for appellees.

J. Stephen Caflisch, with whom Edward R. Mackiewicz and Baruch A. Fellner, Washington, D.C., were on brief, for ami-

cus curiae Pension Benefit Guaranty Corp., urging affirmance.

Before WALD, MIKVA and EDWARDS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Cooper Industries ("Cooper") appeals from a District Court order requiring it to pay the overdue first installment of "withdrawal liability" payments pursuant to the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381–1405, 1451 (1982). Cooper contends that the District Court erred in ordering the withdrawal liability payments to be made without preliminarily assessing whether such payments were required by law. We do not reach the merits of Cooper's appeal because we conclude that the order being challenged is not appealable at this time.

## I. BACKGROUND

The I.A.M. Pension Fund ("Fund") is a multiemployer pension plan within the meaning of the MPPAA. Cooper Industries had, pursuant to various collective bargaining agreements, contributed to the Fund from 1967 until May 25, 1984. After Cooper ceased making payments, the Fund calculated Cooper's "withdrawal liability" pursuant to 29 U.S.C. § 1399 (1982), and notified the company that it owed the Fund $624,343 in withdrawal payments, to be paid in three installments. The first payment of $262,188 was due by September 25, 1984.

When Cooper failed to make the initial payment, the Fund filed suit demanding judgment against Cooper in the amount of the first installment, plus interest from the September 25 payment date. In its answer, Cooper claimed that the requested payment was unlawful under 29 U.S.C. § 1384 because it sought to impose liability for operations sold to another company.

The company also counterclaimed for an injunction against the enforcement of the Fund's withdrawal liability demand. Both parties subsequently moved for summary judgment.

On June 25, 1985, the District Court entered an order in response to the cross-motions for summary judgment requiring Cooper to pay the overdue first installment of withdrawal liability to the Fund, with interest, pending resolution of its counterclaim.[1] The District Court concluded that "withdrawal liability installments must be made despite the presence of legal challenges as to the correctness of those determinations by a defendant employer." District Court Op. at 3. The June 25 order stated that a later order would address Cooper's claim that the payments were incorrectly assessed. Three days later, on June 28, the District Court entered an order rejecting the Fund's contention that Cooper was required to arbitrate the withdrawal liability issue and requesting additional briefing on Cooper's motion for summary judgment. Cooper appeals only from the June 25 order.

## II. APPEALABILITY

■ Cooper appeals the June 25 order pursuant to 28 U.S.C. § 1292(a)(1) (1982), which grants appellate courts jurisdiction over appeals from interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions." Our first task, then, is to assess whether the District Court's order is properly characterized as an order granting an injunction.[2]

■ The District Court order did not purport to grant an express request for injunctive relief. The court had before it cross-motions for summary judgment, neither of which specifically requested an injunction. When a district court order does not result from a specific request for an injunction, however, an appellate court may still hear an appeal from that order if it has the "practical effect" of granting or deny-

---

1. The $262,188 plus interest is currently deposited with the Registry of the Court pending resolution of this appeal.

2. The Fund has characterized the District Court's order as one granting partial summary judgment or, more accurately, as one granting the Fund's motion for summary judgment without reaching Cooper's motion. Whether or not

ing an injunction. *Construction Laborers Pension Trust v. Cen-Vi-Ro Concrete Pipe & Products Co.,* 776 F.2d 1416, 1421–22 (9th Cir.1985). Here we have no problem concluding that the June 25 order had the practical effect of granting an injunction. The definition of an injunction under § 1292(a)(1) is broad: it is any order "directed to a party, enforceable by contempt, and designed to accord or protect, 'some or all of the substantive relief sought by a complaint' in more than preliminary fashion." *United States v. Western Electric Co.,* 777 F.2d 23, 28 n. 12 (D.C. Cir.1985) (citation omitted). The June 25 order requiring Cooper to make the first installment payment to the Fund clearly meets this definition.

█ In order to be appealable under § 1292(a)(1), however, an order which has the practical effect of granting an injunction must also meet the requirements of *Carson v. American Brands, Inc.,* 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981).[3] Under *Carson,* such an order is appealable only if it "might have a 'serious, perhaps irreparable, consequence,' and [if] the order can be 'effectually challenged' only by immediate appeal." *Id.* at 84, 101 S.Ct. at 997; *see Western Electric,* 777 F.2d at 29. In this case, Cooper has not come close to showing that the order might cause irreparable harm and therefore the order is not immediately appealable.

█ Because Cooper failed to identify *Carson* as a controlling precedent,[4] the company made no allegations at all of irreparable harm in its briefs. Pressed at oral argument, counsel for Cooper claimed that unless the June 25 order is reviewed now, it would merge into the final judgment and thus become nonreviewable as a separate order on final appeal. In general, however, when an interlocutory order is not appealable and so merges into the final judgment, it *is* open to review on appeal from that judgment. *Aaro, Inc. v. Daewoo International (America) Corp.,* 755 F.2d 1398, 1400 (11th Cir.1985). Even if Cooper is correct and the order would become moot or otherwise nonreviewable at the time of appeal from the final judgment, Cooper must still show irreparable harm. *Carson* requires both a showing that the order can be effectually challenged only on immediate appeal *and* a showing of irreparable harm. *General Electric,* 777 F.2d at 29–31.

█ Counsel for Cooper argued that the company suffered irreparable harm because the District Court had abdicated its judicial duty to evaluate the merits of its counterclaim before ordering interim payments of the withdrawal liability. While a deserving litigant is always harmed if judicial relief is delayed, such harm does not automatically rise to the irreparable level.

---

that characterization is accurate is irrelevant for purposes of § 1292(a)(1). While an order granting partial summary judgment is ordinarily not appealable, such an order can be appealed pursuant to § 1292(a)(1) if it grants or denies an injunction. *Gomez v. Turner,* 672 F.2d 134, 138 n. 5 (D.C. Cir.1982). The dispositive question for reviewability purposes is therefore whether an injunction was granted.

3. *Carson* does not apply to an order clearly granting or denying a specific request for injunctive relief; such orders are always appealable under § 1292(a)(1). *Cable Holdings of Battlefield, Inc. v. Cooke,* 764 F.2d 1466, 1471 (11th Cir.1985); *Donovan v. Robbins,* 752 F.2d 1170, 1174 (7th Cir.1985). The *Carson* requirements also do not apply to district court orders which have the practical effect of granting or denying an injunction if such orders go to the merits of a case. Such injunctive orders are immediately appealable without a showing of irreparable

harm if they "affect predominantly all of the merits" of the case. *Center for National Security Studies v. CIA,* 711 F.2d 409, 412–13 (D.C. Cir. 1983). Because the June 25 order granted only interim relief and expressly declined to address the merits of Cooper's defense and counterclaim, it cannot be said to have affected predominantly all of the merits of the case.

4. In all fairness, we should note that the Fund failed, until oral argument before this court, to raise the issue of whether the order was not appealable because of Cooper's failure to allege irreparable harm. But even if the Fund had never caught up with this issue, this court would have been obliged to address it since in the absence of jurisdiction under § 1292(a)(1) we lack any authority to review the order. *See Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 379, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981).

Formidable as it is, the cost and delay associated with modern-day litigation simply does not establish irreparable harm. *Western Electric*, 777 F.2d at 30. As the Supreme Court has succinctly put it, irreparable harm must be "greater than the harm suffered by any litigant forced to wait until the termination of the [proceedings] before challenging interlocutory orders it considers erroneous." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379 n. 13, 101 S.Ct. 669, 676 n. 13, 66 L.Ed.2d 571 (1981).[5]

Neither is Cooper irreparably harmed because it must make the withdrawal liability payments directly to the Fund, rather than to the court or an escrow account. Adequate safeguards exist to insure that Cooper will promptly recover any overpayment in a lump sum with interest. *See* 29 C.F.R. § 2644.2(d) (1985). Cooper is not at risk of losing its money or even the time value of that money since it will receive interest on the amount refunded.

■ Finally, our conclusion that Cooper has failed to show irreparable harm stemming from the June 25 order is not altered by the company's citation to *Pantry Pride, Inc. v. Retail Clerks Tri-State Pension Fund*, 747 F.2d 169 (3d Cir.1984). The court in *Pantry Pride* held that a district court's *denial* of a pension fund's request for an order requiring an employer to make interim withdrawal liability payments was reviewable under § 1292(a)(1). *Id.* at 171.

The court found there that the fund would be irreparably harmed by the denial of withdrawal liability payments because the statutory scheme enacted by Congress in the MPPAA was specifically designed "to insure that the flow of employer withdrawal liability payments was not delayed by an employer disputing liability." *Id.* at 171.[6] Congress showed no comparable solicitude for the cash flow problems of employers. Indeed, Cooper's counsel conceded at oral argument that, under the MPPAA's statutory scheme, any assessment of irreparable harm flowing from an injunctive order regarding interim withdrawal liability payments would almost certainly favor the pension fund. Thus an order refusing to require interim withdrawal liability payments is appealable because irreparable harm will result; no such harm flows from an order requiring such payments.[7]

### III. CONCLUSION

While the District Court's June 25 order had the practical effect of an injunction for purposes of § 1292(a)(1), it was not an appealable interlocutory order because Cooper failed to demonstrate any irreparable harm it might suffer if forced to defer its challenge until a final judgment has been entered. This court lacks jurisdiction to hear Cooper's appeal of the June 25 order and that appeal is accordingly

*Dismissed.*

---

5. The Court's statement was made in a case involving the collateral order doctrine, which originated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed.2d 1528 (1949). Under that doctrine, some orders which do not amount to final judgments may nevertheless be appealable as "final decisions" pursuant to 28 U.S.C. § 1291 (1982). The Supreme Court has "defined this limited class of final 'collateral orders' ... [as those which] 'conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and [are] effectively unreviewable on appeal from a final judgment.'" *Firestone*, 449 U.S. at 375, 69 S.Ct. at 674 (citation omitted). The Court has read the third prong of this test to require a showing of irreparable harm. *Id.* at 376, 69 S.Ct. at 674. The requisite showing of irreparable harm is similar to that required in cases involving interlocutory injunctive orders. *Compare In re San Juan Star Co.*, 662 F.2d 108, 112 (1st Cir.1981)

with *General Electric*, 777 F.2d at 30. Thus, the June 25 order would similarly be unappealable under the collateral order doctrine.

6. The *Pantry Pride* court also held that "the loss of the important statutory right to interim payments cannot be effectively reviewed once a final order has been made." 747 F.2d at 171.

7. There are other, analogous contexts in which an immediate appeal will be allowed from an order denying a request for interim relief but no such appeal will be allowed from an order granting such relief. For example, under the collateral order doctrine courts will often allow immediate appeal from orders denying a grant of prejudgment security, but deny appeal from orders enforcing such security. C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3911 at 492 (1976). When a plaintiff cannot obtain security, irreparable harm is threatened because it may later be impossible to

collect on a judgment.  A defendant is not sim-
ilarly at risk because he will get his money

back, with interest, if he prevails.