# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 18, 2011         Decided March 13, 2012

No. 10-7106

OSCAR SALAZAR, BY HIS PARENTS AND NEXT FRIENDS, ADELA
AND OSCAR SALAZAR, ET AL.,
APPELLEES

v.

DISTRICT OF COLUMBIA, ET AL.,
APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 1:93-cv-00452)

*Richard S. Love*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellants. With him on the briefs were *Irvin B. Nathan*, Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General. *Robert C. Utiger*, Attorney, entered an appearance.

*Kathleen L. Millian* argued the cause for appellees. With her on the brief were *Bruce J. Terris* and *Jane M. Liu*. *Lynn E. Cunningham*, *Martha J. Perkins*, and *Paula D. Scott* entered appearances.

Before: ROGERS, GARLAND, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*:  Since 1993, a consent decree has governed how the District of Columbia provides "early and periodic screening, diagnostic, and treatment services" under the Medicaid Act.  The District has now asked the district court to vacate that decree on two grounds:  that an intervening Supreme Court decision has made clear that the plaintiffs lack a private right of action to enforce the Medicaid Act, and that in any event the District has come into compliance with the requirements of the Act.  After the district court rejected the District's first argument, the District appealed without waiting for resolution of the second -- which remains pending.  Because we conclude that the court's rejection of one of the District's two arguments does not constitute an order "refusing to dissolve [an] injunction[]" within the meaning of 28 U.S.C. § 1292(a)(1), we dismiss the appeal for lack of jurisdiction.

I

In 1993, the plaintiffs filed a class action complaint under 42 U.S.C. § 1983, alleging that the District of Columbia was violating the Medicaid Act, 42 U.S.C. § 1396 *et seq.*  In particular, the plaintiffs alleged that the District was failing to properly administer the Act's child health provisions -- known as "early and periodic screening, diagnostic, and treatment" (EPSDT) services. 42 U.S.C. § 1396a(a)(43); *id.* § 1396d(r); *see* Compl. at 37 (J.A. 275).  Although the District argued that the plaintiffs had no private right to enforce those provisions under 42 U.S.C. § 1983, the district court disagreed, *Wellington v. District of Columbia*, 851 F. Supp. 1, 6 (D.D.C. 1994), and determined that the District had violated the Act, *Salazar v. District of Columbia*, 954 F. Supp. 278, 328-33 (D.D.C. 1996).

The District sought appellate review, but it ultimately dismissed its appeal in favor of entering into a comprehensive settlement. The district court approved the settlement and, in January 1999, entered the Settlement Order at issue here. That Order contains detailed requirements governing the District's EPSDT services. The Order, together with subsequent remedial orders, continues in effect today.

In 2009, the District moved, pursuant to Rule 60(b)(5) and (6) of the Federal Rules of Civil Procedure, to terminate the Settlement Order and related orders.[1] The District made two arguments in support of its motion. First, it contended that the Supreme Court's intervening decision in *Gonzaga University v. Doe*, 536 U.S. 273 (2002), "resolved prior confusion in the Supreme Court's . . . jurisprudence in a manner" indicating that there is no private right of action to enforce the EPSDT provisions of the Medicaid Act under § 1983. Defs.' Mem. in Supp. of Mot. to Terminate at 5 (J.A. 604). Second, the District maintained that, even if the plaintiffs did have such a right of action, continuation of the decree was no longer equitable because the District had achieved compliance with federal law governing EPSDT services. *Id.* at 20 (J.A. 619).

In response to the District's motion, the plaintiffs sought discovery as to whether the District was in fact in compliance with the Medicaid Act. Opposing that request, the District argued that the parties should first brief the private right of action issue. "If the Court agrees with the District that no private right of action exists . . . , expensive and time consuming

---

[1] Under Rule 60(b), the court may grant relief from a final judgment based on, inter alia, a finding that "the judgment has been satisfied, released or discharged; . . . or applying it prospectively is no longer equitable," FED R. CIV. P. 60(b)(5), or for "any other reason that justifies relief," *id.* 60(b)(6).

discovery will have been avoided.  If the Court rules against the District, discovery can commence."  Defs.' Opp. to Pls.' Mot. for Disc. at 3 (J.A. 679).  The court adopted the District's suggestion and put discovery on hold.  Order on Pls.' Mot. for Disc. at 1-2 (J.A. 683-84).

In August 2010, after briefing and argument on the private right of action issue, the district court concluded that relief on that ground was unwarranted for three reasons.   First, noting that motions under Rule 60(b) must be brought "within a reasonable time," FED. R. CIV. P. 60(c)(1), the court held that the District had "prejudice[d] Plaintiffs' interests in finality and repose" by waiting seven years after *Gonzaga* was issued before filing its motion.  *Salazar v. District of Columbia*, 729 F. Supp. 2d 257, 261 (D.D.C. 2010).   Second, the court held that *Gonzaga* did not constitute a "significant change" in the law, but merely a clarification.  *Id.* at 266.  As a result, the District could not satisfy either Rule 60(b)(5), which requires "a significant change either in factual conditions or in law," *Rufo v. Inmates of the Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992), or Rule 60(b)(6), which requires "extraordinary circumstances," *Ackermann v. United States*, 340 U.S. 193, 199 (1950).  *See Salazar*, 729 F. Supp. 2d at 263-64.  Finally, the court held that the District had misinterpreted *Gonzaga*.  In the court's view, *Gonzaga* did not deprive the plaintiffs of a private right of action to enforce the Medicaid Act's EPSDT provisions.  *See id.* at 268-71.

Based on this reasoning, the district court issued an order denying the District's motion to terminate "as to the private right of action issue."  *Id.* at 272.   The District appealed immediately, without seeking a ruling on its alternative argument that it had come into compliance with the statute. As of the date of this decision, nothing further has transpired with respect to the compliance issue in the district court.   The

plaintiffs have not renewed their request for discovery, the District has not sought judgment, and the court has not ruled. *See* Oral Arg. Recording at 7:15-7:45; Civil Docket for Case No. 1:93-cv-00452 (as of Mar. 6, 2012).

II

Because we are a court of limited jurisdiction, our inquiry must always begin by asking whether we have jurisdiction to decide a particular appeal. *See United States v. E-Gold, Ltd.*, 521 F.3d 411, 413 (D.C. Cir. 2008); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). If we conclude that we lack jurisdiction, that is also where our inquiry ends.

Under 28 U.S.C. § 1291, our appellate jurisdiction generally extends only to the "final decisions" of district courts. *Carson v. American Brands, Inc.*, 450 U.S. 79, 83 (1981). Although this finality requirement necessarily delays the resolution of important legal questions, Congress has determined that such delay must be tolerated in order to avoid "the debilitating effect on judicial administration" that would otherwise result from "piecemeal appe[llate] disposition of what is, in practical consequence, but a single controversy." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 471 (1978). Nonetheless, "[b]ecause rigid application of this principle was found to create undue hardship in some cases, . . . Congress created certain exceptions to it." *Carson*, 450 U.S. at 83.

The District invokes one such exception, 28 U.S.C. § 1292(a)(1), which gives this court jurisdiction over appeals from "[i]nterlocutory orders . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." In the District's view, the district court's rejection of its private cause of action argument falls within that

exception. According to the District, by rejecting that argument, the court "refus[ed] to dissolve [an] injunction[]." *Id*.

The exception provided by § 1292(a)(1) is a limited one, and the Supreme Court has "construed [it] narrowly." *Carson*, 450 U.S. at 84. Because the "congressional policy against piecemeal review" remains an important concern, *id.*, the Court declared in *Switzerland Cheese Ass'n v. E. Horne's Market, Inc.* that we must "approach this statute somewhat gingerly lest a floodgate be opened." 385 U.S. 23, 24 (1966). To employ a different metaphor suggested by that case's title, we must take care not to turn the barrier against piecemeal appeals into Swiss cheese.

After a series of decisions by the Supreme Court and this court, the scope of § 1292(a)(1) is now relatively clear, though resistant to brief summary. If the interlocutory order in question is one "clearly granting or denying a specific request for injunctive relief" -- or, for purposes of this case, one clearly denying a specific request to dissolve an injunction -- it falls within the plain text of § 1292(a)(1) and is appealable without any further showing. *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Eastern Airlines, Inc.*, 849 F.2d 1481, 1486 n.11 (D.C. Cir. 1988); *I.A.M. Nat'l Pension Fund Benefit Plan A v. Cooper Indus., Inc.*, 789 F.2d 21, 24 n.3 (D.C. Cir. 1986). Even if an order does not by its terms grant or deny a specific request for an injunction -- or, as here, does not by its terms grant or deny a specific request to dissolve an injunction -- the order may still be appealable if it has the "practical effect" of doing so. *Carson*, 450 U.S. at 83; *Cobell v. Norton*, 334 F.3d 1128, 1137 (D.C. Cir. 2003). But such a "practical effect" order is appealable without more only if it "affect[s] predominantly all of the merits." *I.A.M.*, 789 F.2d at 24 n.3 (quoting *Ctr. for Nat'l Sec. Studies v. CIA*, 711 F.2d 409, 412-13 (D.C. Cir. 1983)). Otherwise, a "practical effect" order is appealable only if the

appellant can show that two further requirements are met: that the order "might have a 'serious, perhaps irreparable, consequence,' and that the order can be 'effectually challenged' only by immediate appeal." *Carson*, 450 U.S. at 84; *see Cobell*, 334 F.3d at 1137; *Int'l Ass'n of Machinists*, 849 F.2d at 1486 n.11; *United States v. Western Elec. Co.*, 777 F.2d 23, 29-30 (D.C. Cir. 1985). We refer to these as the "*Carson* requirements," after the Supreme Court opinion that first enunciated them, *Carson v. American Brands, Inc.*, 450 U.S. at 84.[2]

We apply this analysis in the following sections.

---

[2]*Carson* did not itself contain the "affects predominantly all of the merits" exception, which comes from this court's decisions in *I.A.M.*, 789 F.2d at 24 n.3, and *Center for National Security Studies*, 711 F.2d at 413. *Carson* was also unclear as to whether the two *Carson* requirements apply only to "practical effect" orders, or also to orders expressly granting or denying injunctions. The Supreme Court has subsequently suggested that the former is the case, and this circuit and others have so held. *See Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 287-88 (1988) ("Section 1292(a)(1) will, of course, continue to provide appellate jurisdiction over orders that grant or deny injunctions *and* orders that have the practical effect of granting or denying injunctions and have 'serious, perhaps irreparable, consequence.'" (emphasis added)); *Int'l Ass'n of Machinists*, 849 F.2d at 1486 n.11 ("*Carson* does not apply to an order clearly granting or denying a specific request for injunctive relief; such orders are always appealable under § 1292(a)(1)." (quoting *I.A.M.*, 789 F.2d at 24 n.3)); *see also Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1147 (Fed. Cir. 2011); *CFTC v. Walsh*, 618 F.3d 218, 224 (2d Cir. 2010); *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1290 (11th Cir. 2010); *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1223 (10th Cir. 2009).

8

A

The first issue is whether the district court's August 2010 order is one that clearly denies a specific request to dissolve an injunction, and hence is appealable without a further showing. *See I.A.M.*, 789 F.2d at 24 n.3. In this case, that issue has two subparts: (1) whether the 1999 Settlement Order (together with its related remedial orders) is an injunction; and (2) whether the August 2010 order constitutes an order clearly "refusing to dissolve" that Order.[3] Although we are inclined to agree with both parties that the Settlement Order grants injunctive relief, Salazar Br. 8; District Br. 2, we need not resolve that issue because the August order did not clearly refuse to dissolve the Settlement Order.[4]

---

[3]*Cf. Western Elec.*, 777 F.2d at 28-29 & n.12 (applying *Carson* requirements where, although the court found that a consent decree was an injunction, it was not clear whether the appealed-from order constituted a "modification" of that decree).

[4]The argument that the Settlement Order is an injunction for purposes of § 1292(a)(1) is quite strong, given this court's broad definition of an injunction as any order "'directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought by a complaint in more than preliminary fashion,'" *E-Gold*, 521 F.3d at 415 (quoting *I.A.M.*, 789 F.2d at 24), as well as our decisions regarding similar orders, *see Twelve John Does v. District of Columbia*, 117 F.3d 571, 574 (D.C. Cir. 1997) (holding that a consent decree is an injunction); *Western Elec.*, 777 F.2d at 28 n.12 (same). The principal cause for hesitation is *Carson* itself, which held that the "order declining to enter the proposed consent decree" in that case "did not in terms 'refus[e]' an 'injunctio[n],'" but rather "had the practical effect of doing so." 450 U.S. at 83. It may be, however, that *Carson* was focusing on the "refusing," rather than the "injunction," issue.

The August 2010 order did nothing more than reject the first of two reasons the District offered in support of dissolution, leaving argument on and resolution of the second rationale pending. Indeed, as the terms of the order make clear, it did not deny the District's motion in its entirety, but only "as to the private right of action issue." *Salazar*, 729 F. Supp. 2d at 272. Accordingly, the order "did not in terms" refuse to dissolve an injunction. *See Carson*, 450 U.S. at 83.

The crux of the District's contrary argument is that: "It does not matter what the district court may yet do" in ruling on the remaining rationale; "what matters is that the order in question indisputably did refuse to dissolve or modify the Settlement Order." District Reply Br. 6. The implications of this argument are sweeping: in a more complicated case, it would permit a party to present five, or ten, or a hundred arguments for vacating an injunction, and then appeal each time the court decided any one of them. This would certainly leave the barrier against piecemeal appeals with as many holes as Swiss cheese.[5]

*Switzerland Cheese* itself makes clear that it does indeed matter whether there is something more that the district court "may yet do." There, the Supreme Court held that the plaintiffs could not appeal the denial of a motion for summary judgment on a request for a permanent injunction, because a trial on unresolved factual issues was still in the offing. 385 U.S. at 25.

---

[5]We do not mean to suggest that whenever there is something more that the district court "may yet do," a party cannot appeal under § 1292(a)(1). Indeed, because § 1292(a)(1) authorizes appeals from "interlocutory" orders, there will always be something yet to do in the district court. We merely hold that, when a district court rejects only one of multiple grounds for dissolving an injunction, the court has not "in terms" refused to dissolve that injunction within the meaning of *Carson*.

Denying summary judgment was no less a "refus[al]" to immediately grant the requested injunction in that case than was rejecting one of the District's two grounds a "refus[al]" to immediately dissolve the Settlement Order here. And yet, the Court held that there was no appellate jurisdiction in *Switzerland Cheese* because the refusal to immediately grant relief was not the end of the matter.[6]

This court reached a similar result in *Center for National Security Studies*, 711 F.2d at 414. Although the complaint in that case sought disclosure of twelve categories of documents under the Freedom of Information Act (FOIA), the plaintiffs filed an appeal after the district court granted the defendant's motion for summary judgment as to only one. Rather than treat the court's order as expressly denying an injunction, we instead characterized it as having the "practical effect" of doing so, *id.* at 412; applied the *Carson* requirements, *id.* at 413; and dismissed for lack of jurisdiction because the plaintiffs failed to show they would suffer irreparable injury by waiting to appeal from a final judgment on the complaint, *id.* at 414.

The District objects that barring an appeal at this juncture "would elevate form over substance" because this court "plainly would have jurisdiction if the District had filed two separate motions (rather than one motion with two separate grounds) and the district court had denied one of them." District Br. 3. We do not believe that appellate jurisdiction can be conjured so easily. First, had the District attempted to simultaneously file

---

[6]Although in *Switzerland Cheese* the Supreme Court did not describe the order at issue as one having the "practical effect" of refusing an injunction, it subsequently did so in *Carson*, explaining that the *Switzerland Cheese* petitioners' appeal had been dismissed because they were unable to show irreparable harm from waiting until the judgment was final. 450 U.S. at 84-85.

separate motions seeking the same relief and differing only in their rationales, the district court might well have consolidated them by exercising its inherent authority to order its proceedings. *See United States v. Western Elec. Co.*, 46 F.3d 1198, 1207 n.7 (D.C. Cir. 1995). Second, had the District instead held back its alternative rationale, filing it sometime later in the form of another Rule 60(b) motion, it would have risked a ruling that such manipulation warranted denial because the motion was not filed "within a reasonable time," FED. R. CIV. P. 60(c)(1). *See Salazar v. District of Columbia*, 633 F.3d 1110 (D.C. Cir. 2011).

Nor is there any reason to be embarrassed about "elevat[ing] form over substance" under these circumstances. After all, form-over-substance is precisely the point of a doctrine that distinguishes between an order that "clearly" denies a "specific" request to dissolve an injunction, and one that does so only "in practical effect." Accordingly, the District can justify an appeal at this time only if the August 2010 order falls within the latter category.

B

As we have discussed, an interlocutory order that does not expressly refuse to grant or dissolve an injunction may still be appealable under § 1292(a)(1) if it has the "practical effect" of doing so. Although a number of cases have shed light on the meaning of "practical effect," none has extended the term as far as would be required to cover the order at issue here.

*Carson* itself held that a district court's refusal to grant a joint motion to enter a consent decree containing injunctive relief was in practical effect the denial of an injunction. *See* 450 U.S. at 83-84. Unlike here, however, the district court's refusal left no rationale for entering the decree unaddressed.

*Switzerland Cheese*, which *Carson* subsequently characterized as a practical effect case, *see supra* note 6, is a step closer, as it involved a court order that denied summary judgment while leaving trial on the merits to follow. *See* 385 U.S. at 25. But that order did not reject only one of multiple grounds for summary judgment; it rejected the summary judgment motion *in toto*. Our own decision in *Center for National Security Studies* is another step closer. There, we treated the grant of a defendant's motion for summary judgment on only one count of a FOIA complaint, a count that sought disclosure of only one category of documents, as having the practical effect of denying a request for an injunction. But even there, the district court decided the only pending motion in its entirety -- the defendant had not filed for summary judgment with respect to the other counts seeking disclosure of other documents -- thereby entirely resolving the issue regarding that count. *See Ctr. for Nat'l Sec. Studies*, 711 F.2d at 410.[7]

We need not decide whether to take the still further step that would be required to cover the district court's August 2010 order: that is, characterizing an order rejecting only one of two grounds supporting a motion to dissolve an injunction as having the practical effect of refusing dissolution. Although a "practical effect" order is appealable without more if it "affect[s] predominantly all of the merits," *I.A.M.*, 789 F.2d at 24 n.3 (quoting *Ctr. for Nat'l Sec. Studies,* 711 F.2d at 412-13), the order in this case did not do so. Rather, it resolved only one of two merits issues, neither of which predominated over the other as each constituted an independent ground for dissolution of the

---

[7]We note that, although the orders in *Switzerland Cheese* and *Center for National Security Studies* were regarded as having the practical effect of refusing injunctions, the appeal in each was ultimately dismissed for lack of jurisdiction. *See* 385 U.S. at 25; 711 F.2d at 414.

Settlement Order.[8]   Accordingly, even if the district court's order had the requisite practical effect, it is still appealable only if the District "can show [1] that [the] order of the district court might have a 'serious, perhaps irreparable consequence,' and [2] that the order can be 'effectually challenged' only by immediate appeal." *Carson*, 450 U.S. at 84; *Ctr. for Nat'l Sec. Studies*, 711 F.2d at 413.  *Carson* requires both showings, *I.A.M.*, 789 F.2d at 24, and the District of Columbia has failed to make either one.

1.  The District maintains that the denial of its requested relief threatens "serious, perhaps irreparable consequence" because continuation of the challenged orders will "divert [the District's] increasingly scarce financial and human resources." Reply Br. 7.  "[E]ach day that they are in place," the District declares, the orders cost it attorneys' fees, impose litigation burdens, and "consum[e] the time and resources of government officials."  *Id.* at 8-9.  These kinds of injuries, however, are generally insufficient to warrant immediate appeal in a "practical effect" case.  As we have explained, "[t]he cost and delay associated with litigation does not serve to establish irreparable harm" under *Carson*.  *Western Elec.*, 777 F.2d at 30; *see I.A.M.*, 789 F.2d at 25 ("Formidable as it is, the cost and delay associated with modern-day litigation simply does not establish irreparable harm.").[9]

---

[8]*Cf. I.A.M.*, 789 F.2d at 24 n.3 (holding that an order that granted only interim relief but declined to address the merits of the appellant's defense and counterclaims "cannot be said to have affected predominantly all of the merits of the case"); *Ctr. for Nat'l Sec. Studies*, 711 F.2d at 413 (holding that a summary judgment order that ruled on the merits of one count but left eleven counts pending "did not affect predominantly all of the merits in the case").

[9]In *Carson*, by contrast, the claimed injuries were sufficiently irreparable.  There, the consent decree that the district court denied would have directed changes in the defendant employer's personnel

The District also contends that continuation of the orders "threatens 'serious, perhaps irreparable' harm to separation of powers and democratic principles" because it "depriv[es] its current elected officials of their 'designated legislative and executive functions'" until the district court issues a final order. Reply Br. 7 (quoting *Horne v. Flores*, 129 S. Ct. 2579, 2594 (2009)). This argument, once again, has sweeping implications -- suggesting that judicial restriction of the District's freedom of action in administering one of its programs constitutes per se irreparable injury. But whether or not the argument might satisfy *Carson* in some other case, it rings hollow on the facts of this one.

To begin with, the strength of the District's concern about the Settlement Order's fiscal and democratic consequences is cast in doubt by its recent vintage. The District waited *seven years* after the Court issued *Gonzaga* before bringing its motion to terminate based on that decision, and it has not explained why its concern only recently became so pressing. *Cf. Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) (noting that a "'period of delay'" may "'indicate an absence of the kind of irreparable harm required to support a preliminary injunction'" (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985))).

Moreover, although the District repeatedly states that it was the district court that "chose" to initially address only one of its two grounds for relief, Reply Br. 1, 2, 5, that is not quite the

---

policies for the benefit of the plaintiff employees. *See* 450 U.S. at 89-90. *Carson* found that without an immediate appeal, the plaintiffs might forever lose both the chance to settle the case on the terms the parties had negotiated, *id.* at 86, and "specific job opportunities and the training and competitive advantages that would come from those opportunities," *id.* at 89 n.16.

whole story. After the District filed its motion to terminate the Settlement Order, the plaintiffs promptly filed a motion to take discovery on the factual question of whether the District was -- as it contended -- in compliance with federal law. The District responded by opposing the plaintiffs' request, proposing that they not be allowed to take discovery until after the court resolved the private cause of action issue. Defs.' Opp. to Pls.' Mot. for Disc. at 2-3 (J.A. 678-79). "If the Court rules against the District," the District's opposition said, "discovery can commence[, and] it is difficult to imagine any possible prejudice to the plaintiffs in waiting." *Id.* at 3 (J.A. 679).[10] In short, it was the District's litigation strategy, adopted by the court, that led to the bifurcation of issues; had the District not proposed bifurcation, discovery regarding compliance would have proceeded in tandem with briefing on the cause of action issue. And if the litigation had proceeded in that fashion, it is likely that by now either the District would be free of the Settlement Order or we would be reviewing the merits of a final decision.

Finally, the District's inactivity in the district court after that court rejected its cause of action argument only adds to our skepticism regarding its claim of "serious, perhaps irreparable" harm. During the entire time its appeal has been pending, the District has done nothing to pursue a decision on its statutory compliance argument. *See* Oral Arg. Recording at 7:15-7:45; Civil Docket for Case No. 1:93-cv-00452 (as of Mar. 6, 2012). Under these circumstances, and absent any more particularized showing of irreparable injury, we conclude that the District has failed to meet the first *Carson* requirement. *Cf. Carson*, 450 U.S. at 84-85 (explaining that the *Switzerland Cheese* petitioners

[10]There was nothing in the District's opposition to suggest that it planned to appeal immediately if it lost the cause of action issue; to the contrary, the filing gave every indication that if the District lost, it would move ahead on the compliance question.

could not show that the order denying summary judgment on their request for a permanent injunction caused them irreparable harm because they had failed to pursue preliminary injunctive relief).

2. The District's contention that the court's order satisfies the second *Carson* requirement because it "can be effectively challenged only by immediate appeal," Reply Br. 9, is even weaker than its claim of irreparable injury. The District argues that we must hear its appeal immediately because, since the date the District Court decided "the private right of action issue now before this court, no action *has been taken* to advance resolution of the remaining issues [of statutory compliance] raised in the District's motion." *Id.* (emphasis added). But the use of the passive voice obscures the fact that the District itself has taken no action to advance the resolution of the matter in the district court, as we have just discussed. Under these circumstances, the District's concern is premature at best, and we have no reason to conclude that the order rejecting the District's private cause of action argument cannot be challenged effectively once there is a ruling on its remaining compliance argument.

Accordingly, the District's piecemeal appeal fails both *Carson* requirements, and we are therefore without jurisdiction to hear it at this time.[11]

---

[11]We note that under a different jurisdictional provision, 28 U.S.C. § 1292(b), "a party may ask the district court to certify, and the court of appeals to accept, an interlocutory appeal" of an order that involves "'a controlling question of law,' the prompt resolution of which 'may materially advance the ultimate termination of the litigation.'" *Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 607 (2009) (quoting 28 U.S.C. § 1292(b)). The District has not pursued this avenue for obtaining review.

## III

For the foregoing reasons, we dismiss the District's appeal for lack of jurisdiction.

*So ordered*.