# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 13, 2016        Decided November 1, 2016

No. 15-5210

UNITED STATES OF AMERICA,
UNITED STATES DEPARTMENT OF JUSTICE, ET AL.,
APPELLEES

v.

PHILIP MORRIS USA INC.,
FORMERLY KNOWN AS PHILIP MORRIS INCORPORATED,
APPELLEE

R.J. REYNOLDS TOBACCO COMPANY,
APPELLANT

BROWN & WILLIAMSON TOBACCO CORPORATION,
DIRECTLY AND AS SUCCESSOR BY MERGER TO AMERICAN
TOBACCO COMPANY, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:99-cv-02496)

———

*Jeffrey A. Mandell* argued the cause for appellant. With him on the briefs were *Noel Francisco* and *Peter J. Biersteker*. *David M. Bernick* entered an appearance.

*Lewis S. Yelin*, Attorney, U.S. Department of Justice, argued the cause for appellee United States of America. With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, and *Mark B. Stern* and *Alisa B. Klein*, Attorneys. *Melissa N. Patterson*, Attorney, entered an appearance.

*Howard M. Crystal* and *Katherine A. Meyer* were on the brief for plaintiff-intervenors-appellees Tobacco-Free Kids Action Fund, et al.

Before: TATEL, *Circuit Judge*, and EDWARDS and SENTELLE, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: This is the latest appeal in the government's long-running RICO case against the nation's major cigarette manufacturers. Ten years ago, the district court issued a comprehensive remedial order, which included a requirement that defendants and their successors televise "corrective statements" about the dangers of smoking. Eight years later, one defendant, R.J. Reynolds Tobacco Company (RJR), sought to dissolve that order as void under Federal Rule of Civil Procedure 60(b)(4) and unjust under Rule 60(b)(6). The district court denied RJR's motion, and we affirm. As the Supreme Court made clear in *United States Student Aid Funds, Inc. v. Espinosa*, relief under Rule 60(b)(4) is available "only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process." 559 U.S. 260, 271

(2010). None of those defects exists here. And although RJR could have challenged its remedial obligations under Rule 60(b)(6), its failure to do so in a timely manner dooms its motion now.

## I.

In 1999, the United States sued RJR, Brown & Williamson Tobacco Corporation, and several other cigarette manufacturers under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68, alleging a conspiracy to deceive the American public about the dangers of cigarettes. The history of this case is described in our many prior decisions. *See, e.g.*, *United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1105–10 (D.C. Cir. 2009) (*Remedial Opinion*) (affirming most aspects of the district court's liability finding and remedial order); *United States v. Philip Morris USA Inc.*, 801 F.3d 250, 252–56 (D.C. Cir. 2015) (*Corrective Statements Opinion*) (largely upholding the content of the corrective statements). For purposes of this appeal, the relevant facts are as follows.

Prior to trial, Brown & Williamson merged its domestic tobacco operations with RJR and reconstituted itself into a passive holding company called Brown & Williamson Holdings (BWH). The district court then conducted a nine-month bench trial followed by a two-week remedial hearing. In 2006, the court found defendants liable and ordered a complex set of remedies, including a prohibition on the use of misleading terms such as "ultra light" and "low tar," a ban on deceptive statements about the addictiveness of cigarettes, and the remedy at issue here: a requirement that each defendant televise corrective advertisements about the health consequences of smoking. *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1, 938–45 (D.D.C. 2006). The remedial order required the ads to be run in primetime on one

of "three major television networks" at least once a week for a year. *Id.* at 941. Central to this case, the order expressly stated that the injunction applied to "each of the Defendants, except [three], and to each of their . . . successors." *Id.* at 937.

The tobacco manufacturers appealed, challenging many aspects of the order, including the corrective statements remedy and its application to BWH. Relying on an earlier opinion in which we held that RICO's remedial provision, 18 U.S.C. § 1964(a), authorizes only forward-looking remedies aimed at preventing future violations of the Act, the manufacturers argued that the district court lacked authority to require corrective statements. They also argued that the district court had no basis for subjecting BWH to the remedial order given its status as a passive holding company. In 2009, we upheld the corrective statements remedy and remanded for fact finding on "the extent of BWH's control over tobacco operations" and its "current capabilities" to "commit future RICO violations." *Remedial Opinion*, 566 F.3d at 1135, 1140. On remand, the parties agreed that BWH was not a defendant and thus not subject to the injunction, including the obligation to televise corrective ads. *See United States v. Philip Morris USA, Inc.*, No. 99-2496, ECF No. 5846 (D.D.C. Dec. 22, 2010) (approving the parties' agreement concerning BWH).

Two years later, the district court issued an order setting forth the final text of the corrective statements, which the manufacturers appealed. *See United States v. Philip Morris USA, Inc.*, 907 F. Supp. 2d 1, 27 (D.D.C. 2012). While that appeal was pending, the parties began to negotiate how the statements would be disseminated. Although they agreed on most issues, they disagreed about whether RJR had to televise two sets of ads, one as an original defendant and another in its capacity as Brown & Williamson's successor. In RJR's view, requiring it to run two sets of ads exceeded the court's

remedial authority. For its part, the government insisted that double ads were required because the injunction, by its plain terms, applies to "each of the Defendants . . . and to each of their . . . successors." *See Philip Morris*, 449 F. Supp. 2d at 937. In June 2014, the district court entered a consent order outlining the implementation plan and explaining that by agreeing to the order RJR had not "waiv[ed] [its] . . . challenge to the requirement that it publish Corrective Statements on television in its capacity as successor to Brown & Williamson." *United States v. Philip Morris USA, Inc.*, No. 99-2496, 2014 WL 2506611, at *10 (D.D.C. June 2, 2014).

Shortly after entry of the consent order, RJR filed a Rule 60 motion seeking "relief from those provisions of [the remedial order] . . . that require corrective statements on behalf of [Brown & Williamson]." *Philip Morris*, No. 99-2496, ECF No. 6103, at 1 (D.D.C. June 11, 2014). Specifically, RJR invoked Rule 60(b)(4), which allows courts to reopen final orders that are "void," and Rule 60(b)(6), which allows courts to revisit final orders for "any other reason that justifies relief." *See* Fed. R. Civ. P. 60. In other words, RJR sought to modify the injunction so that it would have to run only one set of ads. In May 2015, we largely upheld the order specifying the text of the corrective statements. *Corrective Statements Opinion*, 801 F.3d at 252–62. A week later, the district court denied RJR's Rule 60 motion, prompting this appeal.

RJR argues, as it did in the district court, that the order requiring it to run ads as Brown & Williamson's successor is void under Rule 60(b)(4) because it is punitive rather than preventive, and thus exceeds the district court's RICO authority. RJR also argues that the double-ad requirement is unjust under Rule 60(b)(6).

## II.

We begin, as we must, with our jurisdiction. *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 94 (1998) ("On every writ of error of appeal, the first and fundamental question is that of jurisdiction . . . ." (quoting *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900))). Invoking 28 U.S.C. § 1292(a), which authorizes review of orders "refusing to dissolve or modify injunctions," RJR argues that we may hear this appeal because the district court denied its request to eliminate the double-ad requirement. Although the government agrees, intervenors, a group of six public health organizations, question our jurisdiction on the ground that the district court's denial of RJR's Rule 60 motion "did not change [RJR's] relationship" to the injunction. Intervenors' Br. 18 n.7.

Section 1292(a) creates an exception to the general rule that appellate courts may review only "final decisions." *Salazar ex rel. Salazar v. District of Columbia*, 671 F.3d 1258, 1261 (D.C. Cir. 2012) (quoting *Carson v. American Brands, Inc.*, 450 U.S. 79, 83 (1981)). This circuit construes section 1292(a) narrowly in order to avoid the "debilitating" problems engendered by piecemeal appeals. *Id.* (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 471 (1978)). As we explained in a 2012 decision in this very case, section 1292(a) jurisdiction exists in only two circumstances: where the district court order "clearly grants or denies a specific request for injunctive relief," such as a request to dissolve an injunction; or, if the order does not clearly grant or deny such relief, where the appellant can show that it has the "practical effect" of doing so. *United States v. Philip Morris USA, Inc.*, 686 F.3d 839, 844 (D.C. Cir. 2012); *see also Salazar*, 671 F.3d at 1261–62. In the latter situation, the appellant must show that the order "might have a serious, perhaps irreparable, consequence" and can be "effectually challenged

only by immediate appeal." *Philip Morris*, 686 F.3d at 844 (quoting *Salazar*, 671 F.3d at 1262) (internal quotation marks omitted). An order that "merely *clarifies*" an injunction fails this test and is therefore unreviewable. *Washington Metropolitan Area Transit Commission v. Reliable Limousine Service, LLC*, 776 F.3d 1, 9 (D.C. Cir. 2015).

Intervenors contend that the district court's Rule 60 order merely clarified RJR's existing obligations and thus lacks the practical effect required for appellate jurisdiction. But this argument overlooks the first step of section 1292(a) analysis. Although it is true that the denial of RJR's Rule 60 motion left its remedial obligations intact, an order's "practical effect" comes into play only if it is unclear whether the order denied a specific request for injunctive relief. *Philip Morris*, 686 F.3d at 844. Here, the remedial order expressly applies to "each of the Defendants . . . and to each of their . . . successors," *Philip Morris*, 449 F. Supp. 2d at 937, RJR sought to dissolve its successor obligations, and the district court refused to do so. Because the district court clearly denied "a specific request to dissolve an injunction," *Salazar*, 671 F.3d at 1261, we have section 1292(a) jurisdiction.

## III.

Rule 60(b)(4) authorizes relief from a final order if "the judgment is void." Fed. R. Civ. P. 60(b)(4). We review a district court's Rule 60(b)(4) decision de novo. *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1179 (D.C. Cir. 2013).

The Supreme Court addressed Rule 60(b)(4)'s scope in *United States Student Aid Funds, Inc. v. Espinosa*, 559 U.S. at 260. That case concerned a provision of the Bankruptcy Code that permits discharge of student loan debts only after the bankruptcy court finds that failure to discharge the debt would

impose "undue hardship on the debtor and his dependents." *Id.* at 263 (citing 11 U.S.C. §§ 523(a)(8), 1328). In *Espinosa*, the bankruptcy court discharged a student debt without making the requisite "undue hardship" finding. *Id.* at 265. Holding that this error did not render the confirmation order void, the Supreme Court explained that Rule 60(b)(4) applies "only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id.* at 271. Although the Court did not specify which types of jurisdictional infirmities make a judgment void, it did cite a First Circuit case and two treatises limiting voidness to defects in personal jurisdiction, subject matter jurisdiction, and due process. *Id.* None of those defects is present here. As RJR concedes, "the district court had subject matter jurisdiction in this action," Appellant's Br. 1, and RJR neither challenges personal jurisdiction nor asserts a due process violation.

Instead, RJR contends that the injunction is void because it exceeds the district court's "remedial jurisdiction." Appellant's Br. 26. In support, RJR notes that both RICO's remedial provision, 18 U.S.C. § 1964(a), and our prior opinions speak in terms of the district court's "jurisdiction" to prevent RICO violations, *see, e.g.*, *Corrective Statements Opinion*, 801 F.3d at 256. RJR also points out that the Court in *Espinosa* nowhere limited "jurisdictional error[s]" under Rule 60(b)(4) to subject matter and personal jurisdiction. 559 U.S. at 271. This is true. Indeed, *Espinosa* contains a footnote in which the Court declined to decide whether other errors— specifically, the discharge of certain tax and child support debts, which the Bankruptcy Code prohibits—might also render a judgment "void" for Rule 60(b)(4) purposes. *Id*. at 273 n.10. *Espinosa* thus left the exact boundaries of voidness uncharted.

In our view, however, mere use of the word "jurisdiction" is insufficient to turn a remedial error into a basis for Rule 60(b)(4) relief. As the Supreme Court has made clear, jurisdiction is "a word of many, too many, meanings," *Steel Co.*, 523 U.S. at 90—a proposition all too evident in this case. In section 1964, the term "jurisdiction" refers to a court's authority to impose certain remedies. 18 U.S.C. § 1964(a). That authority is fundamentally different from a court's subject matter jurisdiction over a case and from its personal jurisdiction over the parties, both of which concern the power to proceed with a case at all.

Extending Rule 60(b)(4) relief beyond such "fundamental infirmit[ies]," *Espinosa*, 559 U.S. at 270, would raise serious finality concerns. Because remedial authority is by nature broad, allowing Rule 60(b)(4) challenges to allegedly unauthorized remedies could produce an endless series of interlocutory appeals, especially in complex, long-running cases. Under RICO, for example, even though district court remedial authority is limited to "preventing and restraining" violations of the statute, courts nonetheless retain expansive power to craft remedies within that stricture, as the comprehensive injunction in this case well illustrates.

This finality problem, moreover, is not limited to RICO cases. The Sherman Act, like RICO, grants district courts "jurisdiction to prevent and restrain violations" of the Act. 15 U.S.C. § 4. Under RJR's conception of voidness, litigants could upend complex remedial orders in any antitrust case years or even decades after those orders became final. The same holds true for litigation arising under any statute that grants courts remedial "jurisdiction." *See, e.g.*, 15 U.S.C. § 378(a) (granting "jurisdiction to prevent and restrain violations" of cigarette tax laws); 31 U.S.C. § 5365(a) (granting "jurisdiction to prevent and restrain" internet

gambling violations). And if remedial overreach renders an order void, a statute need not even say "jurisdiction" for remedial errors to trigger Rule 60(b)(4) relief. Complex remedial schemes in voting rights, securities fraud, affirmative action, prison conditions, and scores of other cases could all be challenged on the ground that the remedies imposed were, in one litigant's view, unauthorized by the statute at issue.

This is precisely the outcome the Supreme Court in *Espinosa* warned us to avoid. Although the Court never delineated the precise limits of voidness, it did make clear that the list of defects that render a judgment void must be "exceedingly short," lest "Rule 60(b)(4)'s exception to finality . . . swallow the rule." 559 U.S. at 270. Heeding that guidance, we hold that Rule 60(b)(4) does not permit relief where a court has exceeded its remedial authority. *Cf. United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 662 (1st Cir. 1990) ("Consent decrees that run afoul of the applicable statutes lead to an erroneous judgment, not to a void one."). Such errors are simply not the type of fundamental defects the Court had in mind in *Espinosa*.

Nothing in our prior opinions forecloses this understanding of Rule 60(b)(4). Invoking law of the case, RJR points out that our rulings in this case establish that RICO "constrains the district court's remedial jurisdiction." Appellant's Br. 26. But as we have just explained, remedial jurisdiction differs significantly from subject matter and personal jurisdiction. Although we have confined district court remedial jurisdiction to remedies that "prevent and restrain" violations of the Act, *see Corrective Statements Opinion*, 801 F.3d at 256, we have never held that an order exceeding the court's section 1964 authority falls within Rule 60(b)(4).

RJR also leans on *Karsner v. Lothian*, 532 F.3d 876 (D.C. Cir. 2008). In that case, the district court denied a state Securities Commissioner's motion to intervene in an action to confirm an arbitration proceeding. *Id.* at 879. On appeal, the Commissioner asserted that if the case were remanded to the district court she would "move under Rule 60(b)(4) to void" the confirmation order on the ground that the district court had confirmed an arbitrator's "recommendation" when the statute authorized it to confirm only arbitration "award[s]." *Id.* at 886. In response, we observed that "before a judgment may be deemed void . . . it must be determined that the rendering court was powerless to enter it." *Id.* (quoting *Combs v. Nick Garin Trucking*, 825 F.2d 437, 442 (D.C. Cir. 1987)). We also noted that if "the Commissioner successfully move[d] under Rule 60(b)(4) to void the district court's confirmation order," the court would need to identify a source of authority for its revised order. *Id.* at 887. Seizing on this dicta, RJR contends that voidness applies any time a court has "acted outside of its authority." Appellant's Br. 18. *Karsner* concerned the erroneous denial of a motion to intervene. Although the court discussed Rule 60(b)(4) and even implied that such relief might be available, it never held that Rule 60(b)(4) relief was warranted on remand. In any event, *Karsner* preceded *Espinosa* by two years.

Our conclusion, which flows from *Espinosa*'s instruction that voidness is "rare," 559 U.S. at 271, does not leave parties unable to challenge remedies that exceed a district court's remedial authority. They may do so by filing a motion to alter or amend the judgment under Rule 59(e) and they can appeal pursuant to 28 U.S.C. § 1291 (authorizing direct appeal of final decisions). *See* Fed. R. Civ. P. 59(e). They may also seek relief under Rule 60(b)(6)—the issue we address next.

**IV.**

Rule 60(b)(6) "grants federal courts broad authority to relieve a party from a final judgment upon such terms as are just." *Salazar ex rel Salazar v. District of Columbia*, 633 F.3d 1110, 1116 (D.C. Cir. 2011) (quoting *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863 (1988)). To obtain relief under this provision, a party must file its motion within a "reasonable time" and demonstrate "extraordinary circumstances justifying the reopening of a final judgment." *Id.* (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005)). In this case, the district court determined that RJR failed on both counts. We review its decision for abuse of discretion. *Id.* at 1119.

Although this circuit has rejected a strict limit to the reasonable time requirement, *id.* at 1118–19, we have held that in "a long-running institutional reform case . . . it would be an abuse of discretion to rule that a Rule 60(b)(6) motion is not filed within a reasonable time without finding that the movant's delay has prejudiced the non-moving party," *id.* at 1119. The district court made no such finding in this long-running, complex case. That, however, does not end the matter, as the district court also denied the motion on the ground that the "circumstances presented in [RJR's] Motion [were] not extraordinary." *Philip Morris*, No. 99-2496, ECF No. 6147, at 3 (D.D.C. May 28, 2015); *see also Salazar*, 633 F.3d at 1122 (affirming the denial of a Rule 60(b)(6) motion for lack of "extraordinary circumstances" notwithstanding the district court's failure to address prejudice).

"Extraordinary circumstances" is a high bar. We explained in *Kramer v. Gates* that Rule 60(b)(6) cannot be used "to rescue a litigant from strategic choices that later turn out to be improvident." 481 F.3d 788, 792 (D.C. Cir. 2007) (quoting *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d

572, 577 (D.C. Cir. 1980)). As the district court in this case observed, RJR failed to raise the double-ad issue in its 2006 appeal of the remedial order. Moreover, when appealing the order specifying the text of the corrective statements, RJR chose not to challenge the double-ad requirement; instead it merely mentioned its Rule 60 motion in a footnote. Under our precedent, failure to raise a ripe issue precludes a finding of extraordinary circumstances unless that failure was essentially "involuntary." *Salazar*, 633 F.3d at 1121 (quoting *Twelve John Does v. District of Columbia*, 841 F.3d 1133, 1141 (D.C. Cir. 1988)).

RJR believes it meets this standard. It argues that the earliest opportunity to challenge its successor obligations came in 2014 when, during the parties' negotiations over how to disseminate the corrective ads, the government took the position that the injunction required RJR to run double ads. This argument suffers from a fatal flaw.

Recall that we have section 1292(a) jurisdiction because the district court denied RJR's request to dissolve—rather than clarify—part of the injunction. *See supra* Part II. Indeed, RJR conceded in its Rule 60 motion that the 2006 remedial order *requires* it to run two sets of ads. *See* Mot. for Relief, *Philip Morris*, No. 99-2496, ECF No. 6103, at 1 (D.D.C. June 11, 2014) (asserting that RJR, "in its capacity as successor to Brown and Williamson," sought to dissolve "those provisions [of the remedial order] . . . that require corrective statements on behalf of [Brown & Williamson] . . . in addition to publication of the corrective statements by [RJR]"). Given the standard for appellate jurisdiction, *supra* Part II, this was a wise concession. But it undercuts RJR's assertion that its remedial obligations were unclear until 2014 and undermines its argument for Rule 60(b)(6) relief. Simply put, RJR cannot have it both ways. Either the remedial order imposes a

double-ad requirement, in which case we have appellate jurisdiction but RJR has no excuse for its untimeliness, or the order is unclear, in which case we would lack jurisdiction to entertain this appeal.

Having failed to challenge its successor obligation at any earlier stage of this litigation, RJR now finds itself trapped between this circuit's narrow construction of section 1292(a), which prevents piecemeal appeals, and the high bar for Rule 60(b)(6) relief, which protects the finality of judgments. Together, these settled principles compel the conclusion that RJR's challenge to the double-ad requirement comes too late.

## V.

For the foregoing reasons, we affirm.

*So ordered.*