FILED

FEB 21 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   CC-16-1111-TaLN |
| ) | |
| MARIA VISTA ESTATES, ) | Bk. No.   07-10362-PC |
| ) | |
| Debtor. ) | Adv. No.  15-01096-PC |
| _____ ) | |
| ) | |
| MARIA VISTA ESTATES, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM***  |
| ) | |
| MI NIPOMO, LLC; COSTA PACIFICA) | |
| ESTATES HOMEOWNERS ) | |
| ASSOCIATION, ) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Argued and Submitted on January 19, 2017
at Pasadena, California

Filed – February 21, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Peter H. Carroll, Bankruptcy Judge, Presiding

Appearances:     Roy E. Ogden of Ogden & Fricks LLP argued for
appellant; Penelope Parmes of Troutman Sanders
LLP argued for appellee Mi Nipomo, LLC; Patricia
H. Lyon of French Lyon Tang argued for appellee
Costa Pacifica Estates Homeowners Association.

---

      *  This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1(c)(2).

Before:   TAYLOR, LAFFERTY, and NOVACK,[**] Bankruptcy Judges.

**INTRODUCTION**

This appeal centers around the efforts of chapter 7[1] debtor Maria Vista Estates ("MVE") and Erik Benham, one of MVE's principals, to salvage some return from a real estate development.  MVE and Benham have asserted throughout two bankruptcy cases that a lender fraudulently altered the legal description in a deed of trust securing a development loan.  Both filed chapter 11 bankruptcy petitions; both cases were converted to chapter 7; and both chapter 7 trustees administered the alleged fraud claim.  MVE contends, notwithstanding determinations and events in both bankruptcies, that it acquired the right to pursue the fraud claim when its chapter 7 trustee abandoned real property.  It also argues that the fraud claim survived a bankruptcy-court-approved settlement and related releases.  The MVE bankruptcy court concluded otherwise; we agree with its determinations.  We AFFIRM.

---

[**]  The Hon. Charles Novack, United States Bankruptcy Judge for the Northern District of California, sitting by designation.

[1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.  All "Rule" references are to the Federal Rules of Bankruptcy Procedure.  All "Civil Rule" references are to the Federal Rules of Civil Procedure.

## FACTS[2]

The underlying dispute has meandered through the state and federal court system over the past decade. Some facts, however, are not in dispute:

Prepetion, MVE owned a multi-lot residential subdivision in Nipomo, California (the "Property"). It intended to develop the Property in three phases.

In 2004, MVE acquired financing for phase one of the development from Security Pacific Bank ("Bank"). It secured repayment of this loan through a deed of trust (the "First Trust Deed") which attached a legal description corresponding to the portion of the Property being developed in phase one.

A few months later, however, Bank re-recorded the First Trust Deed (the "Amended First Trust Deed") and changed the attached legal description. The legal description now identified the entirety of the Property as the collateral. The Amended First Trust Deed bore a notarized second acknowledgment of the signatures of Benham, as Managing Member of general partner, BenIng Company, L.L.C., and Mark Pender, as President of general partner, Pender Properties Incorporated. An employee of Fidelity National Title Company ("Fidelity") notarized these signatures.

Thereafter, MVE obtained a second loan from Bank in connection with phase two of the development. It again secured

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the adversary proceeding, the underlying bankruptcy case, and related adversary proceedings. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

3

repayment through a trust deed (the "Second Trust Deed"). The Second Trust Deed attached a legal description which described only the portion of the Property being developed in phase two.

**The present appeal**. What MVE and Benham have doggedly disputed for years is the genuineness of the signatures on the Amended First Trust Deed. They assert that neither Benham nor Pender signed the amended document and that the Bank and Fidelity conspired to file a forgery which fraudulently augmented the collateral securing the phase one loan. They point out that, but for this fraud, the portion of the Property scheduled for development in phase three would be unencumbered and not subject to foreclosure as a result of the phase one and phase two loan defaults. We refer to these allegations as the "fraud claim."

While Benham and MVE raised the fraud claim in a variety of defenses, claims, motions, and actions, this appeal relates to MVE's assertion of the fraud claim through a 2015 quiet title action filed in the California Superior Court against Mi Nipomo, LLC ("Mi Nipomo") and Costa Pacifica Estates Homeowners Association ("Costa Pacifica"), parties with post-foreclosure interests in the Property.

Mi Nipomo and Costa Pacifica removed this quiet title action to the MVE bankruptcy court, and the bankruptcy court dismissed the adversary proceeding. Bankruptcy Court's Order on Motion to Dismiss, Apr. 13, 2016 ("Mem. Dec."). In short, it concluded that MVE lacked standing to bring a quiet title action as a result of previous orders and actions in the MVE and Benham cases. We now turn to those earlier proceedings.

4

**Early proceedings in the MVE bankruptcy case**. In March 2007, MVE filed a voluntary chapter 11 petition. The Property was the only significant scheduled asset.

The Bank, eventually and over MVE's opposition, obtained stay relief allowing it to proceed with a pre-petition judicial foreclosure action. It subsequently brought an emergency motion seeking to correct the legal description in the stay relief order so that it referred to the legal description from the Amended First Trust Deed and, thus, described the entirety of the Property. Benham opposed based on the fraud claim. The bankruptcy court overruled the objection and entered the amended stay relief order.

Thereafter, the bankruptcy court converted MVE's chapter 11 case to chapter 7; Jerry Namba was appointed as the chapter 7 trustee. And later that year, the California Department of Financial Institutions closed Bank, and the Federal Deposit Insurance Corporation ("FDIC") became its receiver and succeeded to its assets.[3]

**Early proceedings in the Benham bankruptcy case**. One day after Bank obtained stay relief in the MVE case, Benham filed a voluntary chapter 11 petition. The Bank then sought stay relief in Benham's case. Benham opposed and raised the fraud claim. The bankruptcy court, nonetheless, terminated the stay but declined to determine the validity, extent, priority, or

[3] The FDIC filed a $22,535,906.49 proof of claim in the MVE bankruptcy case and subsequently transferred the proof of claim to Multibank 2009-1 RES-ADC Venture, LLC ("Multibank"). Thereafter, Multibank sold rights in relation to the phase one loan to Sequoia Financial Solutions IV, LLC ("Sequoia").

enforceability of the Amended First Trust Deed.

The bankruptcy court eventually converted Benham's chapter 11 case to chapter 7.

**Benham's interests in the Property and his related claims are administered.** Benham's chapter 7 trustee filed a motion seeking approval of a settlement and authority to sell Benham estate assets, free and clear, for $450,000 to Nipomo Acquisition, LLC. As relevant here, these assets included: (1) any of Benham's, the Estate's, and the Trustee's claims against the Bank, the FDIC, Multibank, Fidelity, and their respective successors; (2) any and all claims against MVE; and (3) any claim, including under § 544, related to the development loans or the First Trust Deed, the Amended First Trust Deed, or the Second Trust Deed. These assets, thus, included Benham's interest in the fraud claim.

Benham objected to this motion. He also commenced an adversary proceeding based on the fraud claim against the FDIC, Fidelity, and others (the "Benham-FDIC AP"). The bankruptcy court eventually overruled Benham's objection and approved the sale to Nipomo Acquisition, LLC. The order approving the sale is now final.[4]

Once Nipomo Acquisition, LLC acquired the assets and, in particular, the fraud claim, it filed a notice of dismissal of the Benham-FDIC AP under Rule 7041. Further action in the adversary proceeding occurred, but the bankruptcy court eventually dismissed it over Benham's opposition. Benham did

---

[4] Benham appealed; but his appeal was not successful.

6

not appeal.

Finally, Sequoia, then owner of the phase one loan rights, foreclosed on the First Trust Deed and the Amended First Trust Deed. Nipomo Real Estate Group, LLC and Banconsulting Services, LLC purchased the Property at the foreclosure sale. Appellee Mi Nipomo is the successor in interest to the foreclosing parties.

In this appeal, no one questions that the sale to Nipomo Acquisition, LLC, the dismissal of the Benham-FDIC AP, and the Sequoia foreclosure extinguished any interest that Benham personally possessed in the Property and the fraud claim. Benham, however, persisted in asserting this claim in and through the MVE case.

**MVE's chapter 7 trustee abandons the estate's interest in the Property**. After the Sequoia foreclosure, the MVE Trustee filed a notice of his intent to abandon the estate's interest, if any, in the Property. The Trustee wrote:

> The Trustee has concluded that all of the Property is burdensome to the estate and is of inconsequential value or benefit to the estate. Specifically, the Property does not have any equity that can be liquidated for the benefit of the estate. Secured claims against the Property exceed $23,000,000 and proposed purchase offers for the Property have not exceeded $13,000,000. In addition, the estate lacks sufficient funds to continue to insure the Property and maintain 24-hour security. Therefore, based on the foregoing, the Trustee contends pursuant to his business judgment, that the abandonment of the estate's interest in the Property, if any, is in the best interests of the estate and its creditors.

Notice of Chapter 7 Trustee's Intention to Abandon Assets, Mar. 15, 2011, 2. The Trustee served both MVE and Benham with the notice and motion; neither opposed.

7

The bankruptcy court then entered its order authorizing abandonment of "the estate's interest, if any, in the [Property]" and stating "that such abandonment shall be deemed effective without further order of the Court" (the "Abandonment Order"). The Abandonment Order was not appealed.

**MVE's chapter 7 trustee settles MVE's claims related to the Property.** In June 2011, the MVE Trustee moved for Rule 9019 approval of a settlement with Sequoia, Fidelity, RES-CA MV Estates, LLC, and their predecessors and successors in interest (the "FDIC Parties"). In short, the terms were: (1) the MVE bankruptcy estate would receive $200,000 to settle its claim against the FDIC Parties for recovery of the reasonable, necessary costs and expenses incurred in preserving the Property for the FDIC Parties' benefit; and (2) the FDIC Parties would receive a general release of the MVE bankruptcy estate's claims. The proposed settlement agreement ("Settlement Agreement") defines the term "FDIC Parties" as:

> The FDIC as Receiver for the Bank sold interests in the loans, and the holders of such interests include RES-CA MV Estates, LLC,....and [Sequoia]. [The Bank, the FDIC, RES-CA, Sequoia and all predecessors in interest thereof and successors in interest thereto with respect to the Loan and the Property as herein referred to as the "FDIC Parties."]

Chapter 7 Trustee's Motion for Order Authorizing Compromise, June 6, 2011, Ex. 1, p. 2 (second bracket in original). The Settlement Agreement's terms also included a release:

> 3. Release. Trustee hereby releases, waives, and relinquishes all claims, rights, causes of actions or contentions (collectively, "Claims") of any kind or nature, whether transferable or assignable, that he may possess or own that he may assert against any of the FDIC Parties arising in any way out of the Property, and/or security interests asserted or taken

8

in the Property. Said releases extend to any and all claims that would otherwise be preserved under Section 1542 of the California Civil Code, and hereby waives his rights under said section, which reads as follows:
. . .
Trustee hereby warrants and represents that he has not transferred, sold, alienated, pledged or otherwise encumbered, and will not, transfer, sell alienate or otherwise encumber, the Claims prior to the tender of the sums called for in this Agreement.

Id. at 4-5.

The MVE Trustee provided MVE and Benham with a notice of the motion that specifically stated that "the Trustee will provide the FDIC Parties with a full general release (more specifically described in the Agreement)." Benham opposed the motion, arguing that the MVE Trustee "proposes a Compromise . . . subject to a potentially invalid Deed of Trust" and "has never analyzed or has just completely ignored the full extent of the fraudulent nature of" Bank and Fidelity's actions. In short, he again raised the fraud claims; the bankruptcy court overruled his objection. The bankruptcy court then entered an order authorizing the settlement "on the terms set forth in the Settlement Agreement attached as Exhibit '1' to the Motion . . . ." The settlement order ("Settlement Order") was not appealed.

About six months later, Benham brought a state court action against a panoply of parties, including Sequoia and Nipomo Acquisitions, LLC. Benham principally and yet again asserted the fraud claim. After removal, the bankruptcy court granted summary judgment in favor of Nipomo Acquisitions, LLC and another defendant and dismissed the claims with prejudice as to all remaining defendants. Benham pursued multiple appeals; all

9

are currently resolved against him.

**The present action.** As discussed above, after removal, Mi Nipomo and Costa Pacifica both moved for dismissal of the MVE quiet title action with prejudice. MVE opposed and also filed a motion seeking remand. Its opposition included an untimely post-hearing supplemental brief; the bankruptcy court sustained Mi Nipomo's objection to this late filing.

After this hearing, the bankruptcy court entered its decision denying the remand motion. The bankruptcy court concluded that the complaint turned on interpreting and enforcing "orders entered in the proper administration of the MVE and Benham bankruptcy estates which remain pending before this court . . . ." Accordingly, it concluded that it had jurisdiction under 28 U.S.C. §§ 157(b), 1334(b), 1441(a), and 1452(a) and that the matter was a core proceeding under 28 U.S.C. § 157(b)(2)(A). It identified 28 U.S.C. § 1452(b) and the Enron factors as the applicable law and carefully weighed them. See Citigroup, Inc. v. Pac. Inv. Mgmt. Co. (In re Enron Corp.), 296 B.R. 505, 508 n.2 (C.D. Cal. 2003).

On April 13, 2016 at 12:21 p.m., the bankruptcy court entered its order granting both motions seeking dismissal with prejudice based on MVE's lack of standing. On April 13, 2016 at 3:35 p.m., MVE filed a motion for leave to file a surreply or, in the alternative, to strike an argument raised in Mi Nipomo and Costa Pacifica's reply papers. MVE argued that the replies raised a new argument: that MVE's failure to schedule the fraud claim means it was not abandoned. The bankruptcy court denied this motion as moot; it reasoned that it granted the motions to

10

dismiss before MVE filed its motion.

MVE timely appealed the order denying remand, both dismissal orders, and the order denying leave to file a surreply.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334, 1441, 1452, and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

1. Whether the bankruptcy court abused its discretion in denying the motion to remand.

2. Whether the bankruptcy court relied on an argument raised in reply.

3. Whether the bankruptcy court erred in dismissing the adversary complaint pursuant to Civil Rule 12(b)(6).

4. Whether the bankruptcy court abused its discretion in dismissing the adversary complaint without leave to amend.

**STANDARDS OF REVIEW**

We review for an abuse of discretion the bankruptcy court's decision not to remand on an equitable basis. Nilsen v. Neilsen (In re Cedar Funding, Inc.), 419 B.R. 807, 816 (9th Cir. BAP 2009). We review de novo the dismissal of an adversary proceeding under Civil Rule 12(b)(6). Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010). We review dismissal without leave to amend for abuse of discretion. Id. A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if it makes factual findings that are illogical, implausible, or

11

without support in inferences that may be drawn from the facts in the record.  See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).  And we may affirm on any basis in the record.  Bill v. Brewer, 799 F.3d 1295, 1299 (9th Cir. 2015).

# DISCUSSION

**A.  The bankruptcy court did not abuse its discretion in denying MVE's motion to remand.**

The bankruptcy court, in a 26-page decision, stated the basis for its denial of MVE's remand motion.  MVE appealed from the order denying remand, but, in its opening brief on appeal, MVE never specifically discusses remand or the bankruptcy court's analysis of the Enron factors and 28 U.S.C. § 1452(b).  At most in relation to remand, MVE broadly requests that we "grant the appeal" and that we "reverse the dismissal of the State Court Action and send the matter back for trial."  MVE Opening Br. at 30.

As a result, MVE waived any arguments related to the denial of his motion seeking remand on appeal.  See Padgett v. Wright, 587 F.3d 983, 986 n.2 (9th Cir. 2009) (per curiam) (appellate courts "will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief").  Further, even if MVE had not waived the issue, we conclude that the bankruptcy court did not abuse its discretion in retaining the matter.  See In re Cedar Funding, Inc., 419 B.R. at 820–21.

12

**B.    The bankruptcy court did not rely on an argument raised in reply.**

The bankruptcy court struck MVE's request for judicial notice because it was untimely; it later denied as moot MVE's motion for leave to submit the supplemental brief and evidence. On appeal, MVE argues that the bankruptcy court erred in both respects because, in granting the dismissal motions, it relied on an argument raised only in reply, thereby depriving MVE of an opportunity to respond. More specifically, MVE contends that the bankruptcy court "relied heavily on the improperly raised issue that [MVE's] legal claims were not scheduled, or not properly scheduled." MVE Opening Br. 30; cf. MVE Reply Br. 12.

Not so. The record is clear that the bankruptcy court made no finding that the fraud claim was unscheduled. This comports with the bankruptcy court's assessment at the hearing that an argument about whether or not the asset was scheduled helped no one. Finally, MVE raised this issue only after the bankruptcy court issued its decision. Accordingly, we conclude that the bankruptcy court did not rely on newly raised arguments in making its decision; MVE was thus not prejudiced, and we need not further consider this issue.

**C.    The bankruptcy court did not err in dismissing the adversary proceeding.**

The bankruptcy court concluded that dismissal was warranted "by the clear and unambiguous language of the Abandonment Order and Settlement Agreement." Mem. Dec. at 23. Referring to Civil Rule 17(a)(1), it reasoned: "Because [MVE] does not own the fraud claim made the basis of MVE's Complaint, MVE is not the

13

real party in interest with standing to prosecute the fraud claim alleged in the Complaint.  Having determined that the allegations and supporting documents in the Complaint do not support a claim for fraud, the quiet title claim is fatally defective."  Id. at 23-24.

**1. Legal standards for a motion to dismiss under Civil Rule 12(b)(6).**

A motion to dismiss under Civil Rule 12(b)(6) (applied in adversary proceedings by Rule 7012(b)) challenges the sufficiency of the allegations set forth in the complaint and may be based on either absence of a recognizable legal theory or the lack of sufficient facts "alleged under a cognizable legal theory."  Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted).  The factual allegations in the complaint must state a claim for relief that is facially plausible.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Thus, based on the Iqbal/Twombly rubric, the bankruptcy court must first identify bare assertions that "do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation," and discount them from an assumption of truth.  Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  Then, if there remain well-pleaded factual allegations, the bankruptcy court should assume their truth and determine whether the allegations "and reasonable inferences from that content" give rise to a plausible claim for relief.  Id.  "[D]etermining whether a complaint states a plausible claim

14

is context-specific, requiring the reviewing court to draw on its experience and common sense." Ashcroft, 556 U.S. at 679. In limited circumstances, the bankruptcy court may look beyond the complaint: "In ruling on a [Civil Rule] 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).[5]

### 2. Because MVE's chapter 7 trustee settled the fraud claim, MVE may not assert it against Mi Nipomo and Costa Pacifica in the guise of a quiet title action.

The bankruptcy court concluded that MVE was not the real party in interest under Civil Rule 17(a).[6] Civil Rule 17(a) provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1); Fed. R. Bankr. P. 7017 (applying Civil Rule 17 to adversary proceedings). Under Civil Rule 17, the real party in interest is the "party to whom the relevant substantive law grants a cause of action." U-Haul Int'l, Inc. v. Jartran, Inc., 793 F.2d 1034, 1038 (9th Cir. 1986). Accordingly, "most real party in

---

[5] On appeal, MVE does not dispute that the bankruptcy court properly took judicial notice of and considered the bankruptcy proceedings and the various documents filed in them.

[6] "Although the Ninth Circuit has not reached the issue, district courts have permitted parties to raise Rule 17 objections in the context of a motion to dismiss under Rule 12(b)(6)." Runaj v. Wells Fargo Bank, 667 F. Supp. 2d 1199, 1205 n.6 (S.D. Cal. 2009); Langer Juice Co. v. Stonhard, No. CV 13-6323-RSWL-AJWX, 2014 WL 346643, at *4 (C.D. Cal. Jan. 30, 2014). See also Whelan v. Abell, 953 F.2d 663, 672 (D.C. Cir. 1992) ("A real-party-in-interest defense can be raised as a Rule 12(b)(6) motion . . . .").

15

interest inquiries focus on whether the plaintiff or movant holds the rights he or she seeks to redress." Veal v. Am. Home Morg. Servicing, Inc. (In re Veal), 450 B.R. 897, 908 (B.A.P. 9th Cir. 2011).

The bankruptcy court's logic was straightforward: the fraud claim entered the bankruptcy estate; when the MVE chapter 7 trustee abandoned the bankruptcy estate's interest in the MVE Project, he did not also abandon the fraud claim; later, the chapter 7 trustee administered and settled the fraud claim; accordingly, MVE could not bring the fraud claim because it was not the real party in interest.

We agree with the bankruptcy court; thus, we conclude that the bankruptcy court did not err in concluding that MVE failed to state a claim upon which relief may be granted. The fraud claim was extinguished through settlement; MVE could not pursue it.

**The fraud claim entered the bankruptcy estate.** Under § 541(a), filing a bankruptcy petition creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This includes real property, such as the Property. It also includes legal claims and causes of action. United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n.9 (1983); Sierra Switchboard Co. v. Westinghouse Elec. Corp., 789 F.2d 705, 707 (9th Cir. 1986) ("The scope of section 541 is broad, and includes causes of action.").

The "bankruptcy code endows the bankruptcy trustee with the exclusive right to sue on behalf of the estate." Estate of

16

_Spirtos v. One San Bernardino Cty. Superior Court Case Numbered SPR 02211_, 443 F.3d 1172, 1176 (9th Cir. 2006).[7]  Thus, once MVE's chapter 11 proceeding was converted to chapter 7, MVE's chapter 7 trustee was the only party who could assert or administer the fraud claim.

Neither party disputes that the fraud claim was estate property.  Indeed, MVE goes to great lengths to contend that it properly scheduled all of its legal claims, including the fraud claim.  Nor do the parties dispute that MVE's chapter 7 trustee could administer it.  Instead, they disagree on how he administered it: MVE says its trustee abandoned the fraud claim; Mi Nipomo and Costa Pacifica assert that the MVE Trustee settled it.

**The Abandonment Order did not include the fraud claim.**  The bankruptcy court concluded that the Abandonment Order did not include the fraud claim alleged in the complaint.  It explained:

> The court agrees with [Mi] Nipomo that "[t]he estate's interest in the real property, which is disclosed in Schedule A, is distinct from its interest in causes of action," which MVE was required to disclose in Schedule B, including the fraud claim forming the basis of MVE's Complaint.  Namba's Abandonment Notice does not refer to MVE's fraud claim nor give creditors and parties in interest notice of an intention to abandon any cause of action in addition to the 84 acres of land comprising the MVE Project.  The Abandonment Order clearly and unambiguously authorized Namba to abandon only "the estate's interest, if any, in the entire 84 acre Maria Vista Estates project, located at 555 Vista Del Rio, Nipomo, California."  "[T]here is no informal abandonment of property of the estate."  _Curren v. Great Am. Ins. Co., (In re Hat)_,

---

[7]  Section 323(a) provides that the "trustee in a case is the representative of the estate."  11 U.S.C. § 323(a).  And § 323(b) provides that the trustee "has capacity to sue and be sued."  11 U.S.C. § 323(b).

17

363 B.R. 123, 138 (Bankr. E.D. Cal. 2007). Because MVE's alleged fraud claim was neither identified specifically in either the Abandonment Notice or the Abandonment Order, MVE's fraud claim was outside the scope of the Abandonment Order and remained property of the estate after April 28, 2011.

Mem. Dec. at 22-23 (footnotes omitted).

On appeal, MVE argues that this was error because its Trustee abandoned to MVE "all of the estate's remaining interests in the [Property], which included legal claims against parties other than the 'FDIC Parties'[.]" MVE Opening Br. at 12 (capitals removed). MVE also contends that trustee intended to abandon to MVE the quiet title claim against the successful bidders at the foreclosure sale (and their successors in interest). Id. at 25.

MVE's theory runs like so: (1) when the MVE Trustee filed the motion to abandon the estate's interest in the Property, Sequoia had already foreclosed; (2) accordingly, the estate had no legal or possessory interest in the Property; (3) the MVE Trustee was also negotiating the § 506(c) settlement which included a release of all claims against the FDIC Parties, but not against the successful foreclosure sale bidders or their successors-in-interest; (4) "[i]t would have been reasonably apparent to the [MVE Trustee] that, once the Property was foreclosed upon, MVE would also have a quiet title claim against the successful bidders and their successors-in-interest, et.al [sic] based upon the forged deed"; (5) the MVE Trustee did not pursue these legal claims; and (6) thus the MVE Trustee's intent was "to abandon all of the Bankruptcy estate's rights, title and interest in the [Property] in April 2011, including any Quiet

18

Title claims which arise out of the ownership of that real property (except as to the 'FDIC Parties'), to position the bankruptcy estate to be closed." Id. at 25–28.[8]

We agree with the bankruptcy court. "'Abandonment' is a term of art with special meaning in the bankruptcy context." Catalano v. C.I.R., 279 F.3d 682, 685 (9th Cir. 2002). "It is the formal relinquishment of the property at issue from the bankruptcy estate." Id. The bankruptcy code provides that, after notice and a hearing, a trustee "may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Rule 6007(a) states that the "trustee . . . shall give notice of a proposed abandonment or disposition of property . . . ." Fed. R. Bankr. P. 6007(a). Accordingly, "there is no abandonment without notice to creditors." Sierra Switchboard Co., 789 F.2d at 709. Further, "[a]bandonment requires affirmative action by the trustee or some other evidence of the intent to abandon the asset." Pace v. Battley (In re Pace), 146 B.R. 562, 566 (9th Cir. BAP 1992).

As the bankruptcy court correctly noted, the Abandonment

---

[8] At oral argument, MVE advanced a slightly different argument: When the MVE Trustee abandoned the Property, he also abandoned the quiet title claims because quiet title actions essentially run with the land. This argument fails. Although MVE raised this argument below, it failed to argue the point in its opening brief and thus waived it. Second, this argument fails to adequately address the need for specificity when abandoning an asset and the fact that the quiet title action required a successful determination on the personal property fraud claim which was not abandoned.

19

Notice did not inform creditors that the MVE Trustee was abandoning the estate's interest in claims for relief or causes of action. Instead, the notice told creditors that he was abandoning real property. More particularly, the notice stated that the MVE Trustee concluded that the estate could not realize any value from sale of the Property as liens exceeded purchase offers. It further suggested the Property was burdensome because the "estate lacks sufficient funds to continue to insure the Property and maintain 24-hour security." Neither of these statements makes sense if they refer to the fraud claim: A legal claim does not require insurance or 24-hour security. In any event, even if MVE is correct that its trustee intended to abandon the fraud claim, the bankruptcy court correctly found that he failed to do so because he did not provide proper notice to all creditors.

**The fraud claim was included in the Settlement Agreement.**

The bankruptcy court concluded that the MVE Trustee "investigated MVE's fraud claim, and took action to administer the claim as an asset of the estate." Mem. Dec. at 23. It continued:

> MVE's fraud claim was settled by Namba pursuant to the Settlement Agreement approved by Settlement Order under the terms of which the FDIC Parties received a full release of all claims arising in any way out of the MVE Project, and/or security interests asserted or taken in the property comprising the MVE Project, including the fraud claim asserted in MVE's Complaint, in consideration for payment of the sum of $200,000 to the estate.

Id. MVE suggests that the Settlement Agreement released claims against only the "FDIC Parties" and not Mi Nipomo and Costa Pacifica. MVE Opening Br. at 19-25. MVE claims that the "term

20

'FDIC Parties' is not defined within the body of the Settlement Agreement." Id. at 20. Nor, it urges, is there language extending the releases to successors in interest. Id. MVE points out that this contrasts with the MVE Trustee's earlier, unsuccessful attempt to sell the fraud claim. Thus, it contends, the identity of the "FDIC Parties" must be the parties who signed the agreement: the FDIC; Sequoia Financial Solutions IV LLC; Fidelity; and RES-CA VMV Estates, LLC. Id. at 20.

MVE's argument is deeply troubling. MVE never raised this identity argument before the trial court; it thus waived the argument. See, e.g., MVE's Motion to Remand, Jan. 21, 2016, 1-8; MVE's Opposition to Defendants' Motion to Dismiss, Feb. 25, 2016, 1-9; MVE's Reply on Remand, Mar. 3, 2016 1-10. Further, the argument is flatly wrong.

The Settlement Agreement broadly defined "FDIC Parties" in recital paragraph F, found on page 2, as the Bank (i.e., SPB), the FDIC, RES-CA, Sequoia, and "**all predecessors in interest thereof and successors in interest thereto with respect to the Loan and the Property** . . . ." (emphasis added).

MVE concedes that Mi Nipomo and Costa Pacifica are "the successors in interest to Nipomo Real Estate Group, LLC and Banconsulting Services, LLC, the successful bidders in Sequoia's April 2011 trustee's sale of the Phase I Loan . . . ." MVE Opening Br. at 20. The Settlement Order and the related releases thus extend to Mi Nipomo and Costa Pacifica.

In sum, the bankruptcy court did not err when it dismissed

21

the adversary complaint.[9] MVE's chapter 7 trustee administered the fraud claim that MVE seeks to bring to judgment. In exchange for $200,000, the settlement agreement included a general release to the signing parties and their predecessors and successors in interest, including Mi Nipomo and Costa Pacifica, that covered the fraud claim. MVE thus did not and does not have a claim to assert.

**D. The bankruptcy court did not abuse its discretion by dismissing the adversary complaint without leave to amend.**

A bankruptcy court may dismiss an adversary complaint with prejudice if it determines that amendment would be futile. Mirmehdi v. United States, 689 F.3d 975, 985 (9th Cir. 2012); Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

Here, the bankruptcy court concluded that the "deficiencies in MVE's Complaint cannot be cured by amendment." MVE does not dispute this conclusion nor does it suggest any additional facts that could save the complaint. In addition, we agree with the bankruptcy court. For the reasons already discussed, the bankruptcy court properly dismissed the complaint. Because MVE did not own the claim, no additional facts could save the complaint.

---

[9] The bankruptcy court dismissed the second claim for relief — for declaratory relief — as duplicative. MVE does not argue that this was error.

22

## CONCLUSION

Based on the foregoing, we AFFIRM.